Stuart STOTTS, Plaintiff–Appellant,

v.

Melissa MEYER, Defendant–Respondent.

No. 59338.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 12, 1991.

Copeland, Gartner & Thompson, Richard A. Gartner, Becky R. Eggmann, Clayton, for plaintiff-appellant.

Sharon E. Wilkes, St. Louis, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

This case concerns an automobile accident between the plaintiff/appellant Stuart Stotts (hereinafter "appellant") and defendant/respondent Melissa Meyer (hereinafter "respondent"), which occurred on February 8, 1982. The cause of this automobile accident and the extent of appellant's injuries was disputed. Following a two day trial, a jury verdict was rendered in favor of respondent and against appellant, on August 9, 1990.

Subsequent to the entry of the judgment on the verdict, appellant's counsel learned that several jurors[1] in the cause had committed juror misconduct. Juror Flippo informed appellant's attorney that he observed the scene of the accident on his way home from the first day of trial. The sole purpose of juror Flippo's special trip to the accident scene was to verify the evidence presented on the first day of trial. The affidavit of Juror Mark Flippo was attached to appellant's first amended motion for a new trial, filed on August 23, 1990.

On September 5, 1990, respondent filed a Motion to Strike the Affidavit of Mark A. Flippo citing numerous cases which prohibit appellant from inquiring into jury deliberations through juror Flippo. Said motion was never called up for hearing nor was it ruled upon by the court.

On September 28, 1990, appellant subpoenaed juror Flippo to testify at the hearing on appellant's motion for a new trial. Juror Flippo appeared voluntarily and testified under oath about his visit to the scene of the accident. Appellant's motion for a new trial was continued for hearing to October 26, 1990, and thereafter to November 2, 1990, at which time the hearing was concluded and the motion submitted under advisement.[2] The court entered its order on November 14, 1990, denying appellant's motion for a new trial. Appellant filed his notice of appeal and this appeal follows.

In his first point on appeal, appellant states that the trial court abused its discretion in denying appellant's motion for a new trial because juror Flippo's visit to the scene of the accident constituted juror misconduct which influenced the jury's verdict to appellant's prejudice.

Appellant alleges that juror Flippo's special trip to the scene of the accident, was to disregard the evidence presented in the court, and substitute in its place his own impressions respecting the degree of slope or incline leading into the parking lot where the accident occurred. Appellant further argues that juror Flippo's misconduct in obtaining and considering the extraneous evidence was communicated to the other jurors prior to the return of their verdict. This communication, asserts appellant, had an adverse impact on the jury, because immediately following the disclosure at least two jurors abandoned their original positions, changing the vote from seven to five in favor of respondent, to nine to three in favor of respondent, upon which a verdict was entered.

■ The threshold matter in this point is the firmly established rule in Missouri that a juror's testimony or affidavit may not be used to impeach the verdict as to miscon-

---

1. Counsel learned about the misconduct of several other jurors through Juror Flippo. Juror Flippo's affidavit reveals that he gained the information concerning the visit of one or more jurors to the accident scene, in the course of jury deliberations. What transpires during deliberations between fellow jurors cannot be scrutinized because it's an invasion into the sanctity of the jury room. *Gardner v. Reynolds,* 775 S.W.2d 173, 177 (Mo.App.1989). Further, it is inadmissible hearsay. As a result, we focus on the testimony of Juror Flippo at the hearing of September 28, 1990.

2. The record on appeal does not contain the proceedings before the trial judge on October 26, 1990 or November 2, 1990.

duct inside or outside the jury room whether before or after the jury is discharged. *McDaniel v. Lovelace*, 439 S.W.2d 906, 909 (Mo.1969); *State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984); *Gardner v. Reynolds*, 775 S.W.2d 173, 177 (Mo.App.1989); *Shearin v. Fletcher/Mayo/Associates*, 687 S.W.2d 198, 203 (Mo.App.1984). The rule, known as the Mansfield rule and adopted in most jurisdictions, is based on public policy grounds that jurors speak through their verdict and "it is infinitely better that the irregularities, which undoubtedly sometimes occur in the jury room, should be tolerated rather than throw open the doors and allow every disappointed party to penetrate its secrets." The *State v. Fox*, 79 Mo. 109, 112 (1883).

Appellant urges this court to refrain from applying the Mansfield rule to this case due to the fact that its "precedents are not entirely in harmony". *State v. Walker*, 783 S.W.2d 145, 149 (Mo.App.1990) In support of his position appellant advances three grounds,[3] namely: (1) the Mansfield rule does not apply where the juror's testimony goes to the occurrence of certain independent and overt acts bearing upon the verdict, as opposed to the mental processes of any jury member which culminates in the verdict; (2) this case falls within the exception to the Mansfield rule, calling for the admissibility of the evidence where the opposing party fails to object to its introduction; and (3) public policy considerations outweigh any benefit derived from applying the rule to this case.

■ In his first ground appellant asserts that juror Flippo's special visit to the scene of the parties' accident and subsequent

communication of his investigations to the jury after its first vote during deliberations, constitute independent acts of misconduct outside his duty as juror.[4] In support of his position, appellant distinguishes the case *sub judice* from the Supreme Court decisions in *Baumle v. Smith*, 420 S.W.2d 341 (Mo.1967) and *State ex rel. State Highway Commission v. Ballwin Plaza Corporation*, 474 S.W.2d 842 (Mo. 1971). In *Baumle*, the evidence concerned a juror's post-trial statement to plaintiff and his attorney bearing upon the juror's predisposition to find for the defendant. The Supreme Court opined that the juror's statements fell within a forbidden field of inquiry because the statements inhered in the verdict. The court defined "matters inherent in the verdict" to include matters such as:

> ... the juror did not understand the law as contained in the court's instructions, or that he did not join in the verdict, or that he voted a certain way due to a misconception of the evidence, or misunderstood the statements of a witness, or was mistaken in his calculations, or other matters "resting alone in the juror's breast." *Id.* at 348 (citation omitted).

In *Ballwin Plaza*, testimony of three jurors was offered to show that the deliberations of the jury had improperly focused, at least in part, on whether the owner and builder of the shopping center knew or should have anticipated at the time of building the shopping center, that the highway would be widened and a part of his parking area would be taken. The Supreme Court reaffirmed its earlier rulings and stated that "a 'juror will not be heard

---

**3.** We examine appellant's first point of error from his reply brief.

**4.** Appellant tacitly invokes the narrow exception to the Mansfield rule provided by Federal Rules of Evidence, Rule 606(b) where a juror *may* testify "on the question of whether or not extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *Beanland v. Chicago, Rock Island & Pacific Railroad Co.*, 345 F.Supp. 220, 224 (W.D.Mo.1972) rev'd in part, 480 F.2d 109 (8th Cir.1973). The courts have struggled to formulate their own definitions to the two key

phrases, "extraneous influence" and "improper outside influence", left void by the Advisory Committee pursuant to the enactment of Federal Rules of Evidence, Rule 606(b). Crump, 66 N.C.L.Rev., 509, 522 (1988). For example, some courts have interpreted "extraneous prejudicial information" to include information received by the jury, pertinent to the case, other than that received at trial. Examples include a juror who conveys his impressions of personal experience, results of an experiment conducted on a pertinent issue of the case, unauthorized viewing of a site, or knowledge gained from the news media. *Id.*

to impeach' his and the jury's verdict, either as to conduct inside or outside the jury room, either before or after their discharge." *Id.*, at 848. Appellant argues that the misconduct in *Ballwin Plaza* which the court excluded, focused on the subjective reasoning behind the jury's verdict, whereas juror Flippo's misconduct is an independent extraneous act which does not require a subjective analysis.

We believe that juror Flippo's conduct of visiting the accident scene does not come within the purview of "matters inherent in the verdict" referred to by the Supreme Court in *Baumle*. In addition, the transcript demonstrates that the testimony of juror Flippo did not extend to the subjective reasoning behind the jury verdict.[5] As a result, juror Flippo's testimony was competent and admissible. The prohibition against the impeachment of a jury's verdict is inapplicable to the present case.

■ Our inquiry does not stop here because, a court must find that the juror misconduct prejudiced a party before it may declare a mistrial or order a new trial. *Rogers v. Steuermann*, 552 S.W.2d 293, 295 (Mo.App.1977); *State v. Edmondson*, 461 S.W.2d 713, 714 (Mo.1971). We consider the issue of prejudice subsequent to examining appellant's second ground.

■ The linchpin of appellant's second ground is the nonapplicability of the Mansfield Rule, premised on the failure of respondent's attorney to object to the introduction of juror Flippo's affidavit at the evidentiary hearing. Contrary to the general rule prohibiting impeachment of a jury verdict, where the opposing party permits the introduction of a juror's statement or admission as to juror misconduct, without raising an objection to the same, that party waives all right to complain, and on appeal will not be heard to say it was improper. *Milburn v. Robison*, 132 Mo.App. 198, 110 S.W. 598, 600 (1908). *See also, Thorn v. Cross*, 201 S.W.2d 492, 497 (Mo.App.1947); *Shearin*, 687 S.W.2d at 203.

At the hearing on appellant's motion for a new trial, conducted on September 28, 1990, and prior to juror Flippo being called to testify, respondent's counsel asserts that strenuous objections were made to the introduction of juror Flippo's testimony on the ground that it tended to impeach the verdict. Respondent acknowledges that it is her burden to insure that objections become a part of the record.[6] In the present case, the abstract of the record on appeal shows no objections made to the testimony of juror Flippo, no exceptions saved by the respondent, no ruling made by the trial court, no request made for a ruling and no motion to strike. *See Green v. Page*, 290 S.W. 451 (Mo.App.1927); *Middleton v. Kansas City Public Service Co.*, 348 Mo. 107, 152 S.W.2d 154, 157 (1941).

Appellant further argues that *Douglass v. Missouri Cafeteria, Inc.*, 532 S.W.2d 811 (Mo.App.1975) approximates the case at bar. In *Douglass*, two jurors visited and viewed the scene of the plaintiff's fall for the purpose of helping them to judge the case and then reported their findings to the other jurors during the course of their deliberations. At the evidentiary hearing the two jurors testified without objection and this court affirmed the trial court's order granting a new trial. *Id.* at 813. The *Douglass* court found *Middleton, supra,* to be controlling.[7]

---

**5.** See *Rogers v. Steuermann,* 552 S.W.2d 293, 295 (Mo.App.1977), where the court states that "upon separation of the jury after submission of a case, it is not possible to prevent a juror from reflecting on the evidence of the case. However, a juror may not independently seek evidence, *Middleton v. Kansas City Public Service Company,* 348 Mo. 107, 152 S.W.2d 154 (1941); *visit the scene of an accident, Douglass v. Missouri Cafeteria, Inc.,* 532 S.W.2d 811 (Mo.App. 1976); ... or inform other jurors of his personal knowledge of the circumstances of the case, *Cook v. Kansas City,* 358 Mo. 296, 214 S.W.2d 430, 433 (1948)." *Id.*

**6.** See 4A C.J.S. Appeal and Error, section 712, for cases in Missouri which support the position that for an alleged error with regard to the evidence presented for review, the record must show a timely objection or motion in the trial court, the objection made and the grounds for the objection, ruling of the court and that the party complaining was prejudiced or aggrieved thereby.

**7.** The qualification to the Mansfield rule is discussed in *Middleton,* supra, and *Shearin,* supra, and we need not reiterate what was pronounced there.

■ Likewise we find that juror Flippo's visit to the scene of the accident for the purpose of verifying the evidence presented in court and communication of his impressions to the other jurors during the course of deliberations constituted juror misconduct. Further, the testimony of juror Flippo was admitted at the evidentiary hearing without objection by opposing counsel. As a result, juror Flippo was competent to testify.

■ We now focus our attention to the question of prejudice to the appellant as a result of juror Flippo's misconduct. Appellant cites to *Middleton*, 152 S.W.2d at 158, in support of his contention that prejudice to the losing party is presumed where evidence of misconduct is found. "Essentially, the trial courts must exercise a sound discretion in considering the prejudicial effect of juror misconduct". *Rogers*, 552 S.W.2d at 295. The appellate court should defer to the lower court's decision unless it substantially appears that the trial court committed error in finding that there was or was not juror misconduct or was or was not prejudicial impact upon the verdict as a result of such misconduct. *Id.*

Here, we are confronted with a situation where the trial judge made no finding as to juror misconduct. In overruling appellant's motion for a new trial in the case at bar, the trial court made no express finding as to any prejudice to the appellant. We can, however, infer lack of prejudice from the denial of the motion for a new trial. *Rogers, supra,* at 295.

■ Upon examining the record we are of the opinion that juror Flippo's unauthorized viewing and visit to the parties' accident site was prejudicial to the appellant. Juror Flippo's conduct was not "innocuous and innocent" as respondent would like us to believe. While it is true that several jurors admitted during voir dire examination that they were familiar with the accident scene, this familiarity prompted appellant's counsel to question said jurors, who agreed that they could "put aside their feelings about the stretch of road and come to a fair decision."

The fact that juror Flippo conducted his investigation from across a few traffic lanes does not overcome the main purpose of his visit, to seek outside evidence. His testimony reveals the following:

Q: Was the reason that you visited it was the lack of, or perceived lack of substantive evidence in the case concerning the slope?

\* \* \* \* \* \*

A: [Flippo] It was to verify the evidence presented because the photo that they presented for the court case didn't give you a clear picture of the area.

The extraneous evidence was communicated to the fellow jurors immediately after the jury's first vote. Subsequently thereafter, the jury's vote changed from 7–5 in favor of respondent to 9–3 in favor of respondent, a consensus sufficient to render a verdict in favor of the respondent. Appellant was entitled to have his case tried by twelve impartial jurors who would base their decision on the evidence presented in court. *Middleton*, 152 S.W.2d at 160. "Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men." *Thorn*, 201 S.W.2d at 497 (citing *Lee v. Baltimore Hotel Co.*, 345 Mo. 458, 463, 136 S.W.2d 695, 698 (Mo.1939)).

We believe that juror Flippo's quest for independent information for the purpose of enabling him to arrive at a decision, and communication of his impressions to the other jurors during deliberations, influenced the verdict to appellant's prejudice.

Our ruling above is sufficient to reverse the judgment and remand the cause for a new trial. Appellant however, raises four additional points on appeal for us to determine. Two of the assignments of error pertain to the trial judge's error in: (1) striking for cause a juror; and (2) overruling appellant's motion to strike for cause a juror. Because an identical scenario is unlikely to emerge on retrial the above issues do not merit our determination.

The gist of appellant's third assignment of error is: the trial court erred in submit-

ting respondent's Instruction No. 8, because it deviates from M.A.I. Instruction 32.01(2) in form and content; is confusing, misleading and fails to state the ultimate facts to the jury; and deviates from the language set forth in M.A.I. 17.20. On appeal, appellant does not contend that there is insufficient evidence to support the elements of negligence contained in respondent's Instruction No. 8. Appellant has not furnished this court with the complete record on appeal and "stresses that for purposes of this appeal, a review of such evidence is not essential in order to ascertain the *legal deficiencies* in respondent's Instruction." We have examined appellant's point and trust that on retrial counsel will follow the Missouri Approved Instructions pursuant to Rule 70.02(b), Missouri Rules of Civil Procedure.

Appellant's last assignment of error alleges trial court error in submitting respondent's comparative negligence claim because the doctrine was improperly invoked by the respondent. Appellant admits that respondent's first amended answer arguably supports a general claim against appellant for contributory negligence. For purposes of this opinion, we reiterate the court's holding in *O'Laughlin v. Barstow*, 654 S.W.2d 95, 97 (Mo.App. 1983), that the trial court is authorized "to submit the issue of contributory negligence specifically where the affirmative defense of contributory negligence was pleaded generally and plaintiff made no request that the pleading be made more definite and certain." *Id.*

The judgment is reversed and the cause is remanded for a new trial.

STEPHAN, J., concurs.

CRIST, J., dissents without written opinion.