### Kimberly NEIGHBORS, a minor,
et al., Plaintiffs/Appellants,

v.

### Eli WOLFSON, M.D., et al.,
Defendants/Respondents.

No. 66155.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 4, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Theodore S. Schechter, Michael L. Schechter, Clayton, for appellant.

Christopher Karlen, St. Louis, for respondent.

Before SMITH, P.J., and GARY M. GAERTNER and RUSSELL, JJ.

#### ORDER

36

Arthur G. Muegler, Jr., Donald V. Nangle, Clayton, Michael A. Gross, St. Louis, for appellants.

Coffelt & Coffelt, P.C., Kemper R. Coffelt, Richard J. Mehan, Jr., Clayton, Sandberg, Phoenix & Von Gontard P.C., Kathleen L. Pine, Nancy J. Niemeier, St. Louis, for respondents.

PUDLOWSKI, Presiding Judge.

In this medical malpractice action, Mary Neighbors (Mary) et al., collectively appellants, challenge both the trial court's refusal to conduct a post-trial evidentiary hearing and its entry of judgment on a verdict in favor of Dr. Eli Wolfson (Wolfson) et al., respondents herein. Appellants claim the trial court abused its discretion in denying appellants' motion for an evidentiary hearing to investigate possible juror misconduct. Appellants further urge that they were entitled to judgment notwithstanding the verdict because all of the evidence adduced at trial supported their claim. The judgment of the trial court is affirmed.

The facts of the case are undisputed for purposes of this appeal. Mary was pregnant, and Wolfson, acting as Mary's obstetrician, had calculated an expected delivery date of March 25, 1989. When Mary had not gone into labor by March 30, Wolfson conducted an examination to ascertain the baby's health. The baby was found to be healthy, but Wolfson explained to Mary that because of the risk of mortality for babies delivered after the forty-first week of pregnancy, delivery should be accomplished via artificial means (i.e., induction of labor or cesarean section). Wolfson explained to Mary, as he had done previously, that while both the cesarean section procedure (which Mary had undergone before) and labor induction via administration of the drug Pitocin involved some risks, he recommended the latter option. Wolfson explained that although Pitocin entailed "remote risks" of uterine rupture, these risks were not as significant as those inherent in the cesarean section option. Mary agreed to the trial induction of labor option, and on April 7 she was treated with Pitocin. Unfortunately, the contractions brought on by administration of the Pitocin caused Mary's uterus to rupture, resulting in severe brain damage to her baby, Kimberly Neighbors (Kimberly). Appellants then brought the instant action, the trial of which ended in entry of judgment for respondents on a jury verdict.

After the jury returned its verdict, appellants moved for an evidentiary hearing, alleging that extrinsic, prejudicial material had been wrongfully considered by the jury in its deliberations. Appellants attached the affidavits of four jurors to the motion; the affidavits stated that one of the jurors, a former insurance adjuster, had brought a booklet into the jury room that discussed the use of Pitocin and apparently presented it in a favorable light. Appellants' theory of liability at trial was that Wolfson had negligently failed to inform Mary of Pitocin's risks vis-a-vis the risks of having a cesarean section and, therefore, appellant had not given her informed consent to the Pitocin treatment. Respondents timely objected to the juror affidavits and the proposed juror testimony, and the trial court refused to hold an evidentiary hearing.

The precedents of this state are legion which recite the rule that "the affidavit or testimony of a juror is inadmissible and is not to be received in evidence for the purpose of impeaching the verdict of a jury" of which the juror was a member. *Smugala v. Campana,* 404 S.W.2d 713, 717 (Mo.1966); *Wingate v. Lester E. Cox Medical Center,* 853 S.W.2d 912, 916 (Mo. banc 1993); *Reaves v. Kramer,* 97 S.W.2d 136, 145 (Mo.App.W.D. 1936). This formulation of the rule might be slightly misleading, however. A verdict can certainly be attacked on the ground that juror misconduct occurred during the juror's deliberations. *Green v. Lutheran Charities Ass'n.,* 746 S.W.2d 154, 157 (Mo.App.E.D. 1988); *Berry v. Allgood,* 672 S.W.2d 74, 78 (Mo. banc 1984). However, the testimony of a juror only provides a competent evidentiary basis for such an attack when two conditions are met. First, the party in whose favor the verdict was returned must acquiesce in the proposition that the juror is competent to give such testimony; such acquiescence exists when a party fails to object to admission of both the affidavits containing the juror statements and to the juror testimony offered in court. *Stotts v. Meyer,* 822 S.W.2d 887, 890 (Mo.App.E.D.1991); *Gantz v. Leibovich,* 569 S.W.2d 373, 374 (Mo.App. E.D.1978); *Green,* at 157. Second, the juror testimony must allege that extrinsic evidentiary facts (i.e., facts bearing on trial issues but not properly introduced at trial) were interjected into the jury's deliberations, rather than merely that jurors acted on improper motives, reasoning, beliefs or mental operations (the latter type of juror testimony is said to concern "matters inherent in the verdict"). *Baumle v. Smith,* 420 S.W.2d 341, 348 (Mo.1967); *Stotts,* at 889–890. Extrinsic evidentiary facts enter a jury's deliberations when, for example, a juror visits an accident scene without the court's authorization and then shares his observations with his fellow jurors, *See Stotts,* at 890–891, or when a juror brings a newspaper into the jury room and reads an article from it to the venire. *See U.S. v. Thomas,* 463 F.2d 1061 (7th Cir. 1972).

Appellants argue fervently that the juror testimony offered in this case, wherein four jurors state that a booklet containing

statements bearing on a central issue in the case was viewed and discussed by the jury, unquestionably alleges that extrinsic evidentiary facts infiltrated the jury's deliberation. We agree. *See Gantz*, at 374 (evidence that jury had read and discussed a book on stopping distances in an auto accident case held inadmissible because proper objection interposed, not because it inhered in verdict). However, it is also beyond dispute that respondents properly objected to the juror testimony, thereby rendering the jurors incompetent to give testimony tending to impeach their verdict. Whatever logical or policy defects may exist in this rule, it is the established law in Missouri, and we are bound by it.[1] Finally, it should be noted that even where juror testimony is competent to impeach a verdict, it is incumbent upon the trial judge to decide whether the juror misconduct complained of prejudiced the verdict. *Stotts*, at 891. This determination is vested in the discretion of the trial court and is, therefore, reviewed under the abuse of discretion standard of review. *Baumle*, at 347.

Appellants also contend that they are entitled to judgment notwithstanding the verdict (JNOV) because all of the evidence supports a finding that respondents are liable. Appellants had the burden of adducing substantial evidence in support of every element of their claim. *Mathews v. Chrysler Realty Corp.*, 627 S.W.2d 314, 319 (Mo.App. W.D.1982). When reviewing a trial court's denial of a motion for JNOV, appellate courts view the evidence and all reasonable inferences therefrom in the light most favorable to the prevailing party, disregarding all the evidence and inferences to the contrary. *Dierker Associates, D.C., P.C. v. Gillis*, 859 S.W.2d 737, 743 (Mo.App.E.D.1993). Thus, for appellants to be entitled to JNOV, there must be uncontradicted evidence supporting every element of their claim.

Appellants' position is that respondents' own evidence established both a duty incumbent on Wolfson and his breach of that duty. Specifically, appellants argue that Wolfson had a duty to explain all childbirth alternatives, and the risks attendant to each,

to Mary and obtain her consent before selecting one of these alternatives. All parties agree that this is so, and in fact both appellants and respondents testified at trial that respondents did furnish Mary with the necessary information and did obtain Mary's consent to induce labor via administration of Pitocin. However, appellants assert that respondents' informed consent duty required him to explain Mary's medical alternatives to her again, and to again obtain her consent, on April 7, 1989, the day when labor was induced with Pitocin. But the testimony of respondents' expert expressly rejects the existence of any such duty. Thus, even if it is true that respondents did not obtain "fresh" informed consent on April 7, this does not signal negligence, since there is evidence that no such duty was incumbent on respondents (and given our standard of review, it is irrelevant whether there was also evidence for the opposite proposition).

The judgment of the trial court is affirmed.

SIMON and HOFF, JJ., concur.

---

1. McCormick on Evidence, 4th Ed., § 68, notes that although the basic rule barring juror impeachment of a verdict is "firmly entrenched," a few courts would abandon the rule as applied to extrinsic evidence, apparently without regard to objection by the nonmovant as to the juror's competency to testify.