Paul TRAVIS, Appellant,

v.

Meredith Lynne STONE,
et al., Respondents.

No. SC 83551.

Supreme Court of Missouri,
En Banc.

Jan. 22, 2002.

his wife was brought against three defendants: Meredith Lynne Stone, Lowell Walter Hulse, and Apex Digital TV, Inc., Hulse's employer. Travis was awarded a verdict against Stone, but did not succeed in his claims against Hulse and Apex. Following the verdicts for Hulse and Apex in the underlying action, Travis filed a motion for new trial on the basis that one of the jurors improperly visited the scene of the accident during the course of the trial.

The circuit court denied Travis' motion for new trial without comment. Travis appealed that decision to the Court of Appeals, Western District, and, after opinion, this Court granted transfer. Mo. Const. art. V, sec. 10. The basis of the appeal is that the trial court abused its discretion in denying the motion for a new trial in that the trial court erred in finding that Travis was not prejudiced by the juror's conduct. Because the only evidence offered to rebut the presumption of prejudice was the testimony of that juror and because such testimony was insufficient to rebut the presumption of prejudice, the trial court judgment is reversed, and the case is remanded.

### Background

Paul Travis' wife, Valorie Travis, was killed in an accident on February 16, 1998, while traveling southbound on Missouri Highway 13, near the intersection of Missouri Route 13 and County Road 250 in Johnson County, Missouri. Valorie Travis had come to a stop on Missouri 13 while waiting to make a left turn off the highway. Defendant Stone was also traveling southbound on 13 behind Valorie Travis. Stone took her attention away from the road momentarily. When Stone realized that Travis was stopped, she attempted to

J. Kent Emison, Robert L. Landgon, Bradley D. Kuhlman, Mark J. Evans, Lexington, Michael W. Blanton, Blue Springs, for Appellant.

Keith A. Cary, John G. Schultz, Dennis E. Davidson, Kansas City, for Respondents.

PER CURIAM.[1]

This appeal arises from a wrongful death action brought in Johnson County. Paul Travis' original action for the death of

---

1. This opinion is taken in large part from the opinion submitted by the Honorable James M. Smart of the Court of Appeals, Western District, before this Court granted transfer.

avoid a collision by swerving to the right, but it was too late to avoid rear-ending Travis' vehicle. After being struck by Stone's vehicle, Travis' vehicle traveled forward, swerving into the northbound lane. Defendant Hulse, who was traveling in the northbound lane, then struck Travis' vehicle on the passenger side. Valorie Travis died as a result of the injuries she sustained in this second collision with the vehicle Hulse was driving.

Travis raised numerous claims of negligence against Hulse and Apex, all of which depended upon the ability of Hulse to see and react to the first collision between Valorie Travis' vehicle and Stone's vehicle. The two claims of negligence most pertinent to this appeal are: (1) that Hulse, had he been using the highest degree of care, should have known that there was a reasonable likelihood of a collision in time to have avoided colliding with Travis' vehicle and (2) that Hulse failed to keep a careful lookout. There was a substantial amount of conflicting testimony at trial regarding the sight distance of Hulse and the reaction time available to him.

Following the trial, plaintiff Travis discovered that one of the jurors, Violet Zink, made a trip to the scene of the accident over the lunch hour, during a break in the testimony of Travis' accident reconstruction expert. Travis then sought a new trial on the basis that Zink obtained evidence outside of that presented at trial, which bore directly on the issue of Hulse's sight distance, an issue hotly contested at trial and which was the subject of the testimony from both sides' expert witnesses.

At a hearing held on December 21, 1999, Zink testified that she made the trip to examine the layout of the scene, including the incline of the road, because she was concerned over the issue of Hulse's sight distance and what he could have seen at the scene of the accident. She further indicated that her visit to the scene provided her with information that helped her to understand the testimony presented at trial. On the other hand, she noted that she had lived in Warrensburg, Missouri all her life, and that she drives through the area of the scene of the accident "a hundred times a year," and she was only trying to "refresh [her] memory." In addition, she said she did not use the visit to the accident scene to help her decide anything, and she said that her visit to the scene did not sway her vote one way or the other. Finally, she testified that her verdict was based upon the evidence presented at trial and that she did not mention her visit to the scene to any of her fellow jurors.

The court held that the juror's visit to the accident scene constituted misconduct and indicated that he would take the matter under advisement to determine whether the misconduct resulted in prejudice to Travis' case. On January 7, 2000, the trial court entered its order denying Travis' motion for a new trial without explanation. Travis appeals that judgment to this court.

### Standard of Review

 A motion for new trial, based on a juror's acquisition of extraneous evidence, is left to the sound discretion of the trial court. *Middleton v. Kansas City Pub. Serv. Co.*, 348 Mo. 107, 152 S.W.2d 154, 159 (1941). The appellate court may reverse the lower court's denial of a new trial if it appears that the trial court abused its discretion in ruling on the issue of extraneous evidence or the issue of prejudice. *Id.* However, once it is established that a juror has gathered evidence extraneous to the trial, prejudice will ordinarily be presumed, and the burden is on the respondent in such a case to overcome the presumption of prejudice. *Id.* at 158–160.

## Extraneous Evidence

In his sole point on appeal, the appellant, Paul Travis, argues that the trial court erred in denying his motion for a new trial. Travis contends that because it is undisputed that juror Zink gathered extraneous evidence, the only issue before the court was whether he was prejudiced by this action. Travis argues that the trial court erred in finding no prejudice.

As a preliminary matter, we consider the issue of the propriety of allowing juror Zink's testimony. The general rule in Missouri is that a juror's testimony about jury misconduct allegedly affecting deliberations may not be used to impeach the jury's verdict. *Wingate by Carlisle v. Lester E. Cox Med. Ctr.*, 853 S.W.2d 912, 916 (Mo. banc 1993). However, it is permissible to elicit testimony about juror misconduct that occurred outside the jury room, such as the alleged gathering of extrinsic evidence at issue here. *Stotts v. Meyer*, 822 S.W.2d 887, 889 (Mo.App.1991). Even where the purpose of testimony regarding the misconduct (whether it occurred inside or outside the jury room) is to impeach the verdict, the party complaining of the testimony must make a timely and proper objection or else the issue is waived. *Id.* at 890. Here, the defendants, Hulse and Apex, failed to make any objection to juror Zink's testimony, nor do they now argue on this appeal that it would be improper to consider that testimony, and, in fact, they rely on that testimony to support their contention that there was no evidence of prejudice. Accordingly, the testimony is properly before this Court.

Also, as a preliminary matter, we note that the jurors were not specifically instructed that they should not visit the scene of the accident. The term "misconduct," therefore, does not precisely apply. Nonetheless, juror Zink gathered evidence extraneous to the trial. Our trial procedures do not contemplate and cannot well tolerate such independent investigation by jurors.

Although juror Zink denied that her observations at the accident scene entered into the deliberations in any way, her testimony does not necessarily settle the issue of prejudice. Travis contends that once a party has established that a juror gathered evidence extraneous to the trial, the burden shifts to the opposing party to show that no prejudice resulted from it. We agree. This rule was established in 1941 in *Middleton v. Kansas City Public Service Co.*, 348 Mo. 107, 152 S.W.2d 154 (1941), and remains applicable. In addition, *Middleton* dictates that little weight be given to the offending juror's assessment of the effect of this conduct. *Id.* at 158.

## Presumption of Prejudice

*Middleton* involved a collision between a streetcar and an automobile. There was a conflict in the evidence as to whether the streetcar struck the automobile, or vice versa. One issue that developed was whether any part of the auto would or could go under the body of the streetcar. As in the case at hand, there was evidence of juror misconduct that occurred outside the jury room. A juror named Tudor, who later signed the verdict as foreperson, admitted visiting various automobile establishments during the trial, in an effort to measure the height of the left rear fender of the vehicle model in question. He also admitted that he found a streetcar similar to the one in the case and measured it. The juror stated by affidavit, however, that the measurements did not influence his decision. The juror also said his measurements did not affect the verdict of any other juror or the result of the case. He said that, immediately upon retiring to deliberate, the jury, without discussion, voted

for the plaintiff by a vote of 10–2. He said the verdict was based solely on the evidence at trial. In addition to the affidavit of juror Tudor, the plaintiff offered affidavits of nine other jurors, all stating that the jury did not discuss the evidence during deliberations and that the verdict was based only on the evidence adduced at trial.

The trial court held that the juror committed misconduct, but there was no showing that the misconduct influenced the verdict. On appeal, this Court determined that the juror's misconduct evidenced a "disposition [by the juror] not to be governed by the evidence adduced in court" and then held that prejudice to the losing party "must be presumed," shifting the "burden of evidence" to the respondent to show the lack of prejudice to the appellant. *Id.* This Court then noted that the trial court decided the matter on the theory that the appellant had the burden of showing prejudice, when it should have regarded the plaintiff as having the burden of showing that prejudice did not result. This Court also distinguished the type of misconduct in *Middleton* (the gathering of extraneous evidence), from other types of misconduct.[2] In addition, this Court held that the jurors' affidavits had "little probative value" because of the common tendency of jurors to minimize the effect of misconduct. *Id.*

In other cases, the courts have also taken a strict view toward the acquisition of extra-trial evidence by jurors. In *Douglass v. Missouri Cafeteria, Inc.*, 532 S.W.2d 811 (Mo.App.1975), the trial court decision to grant a new trial on the basis of juror misconduct was upheld. In that case, two jurors visited the scene of plaintiff's slip-and-fall for the purpose of gaining information to help in deciding the case and then discussed their observations with the other jurors. In *Stotts v. Meyer*, 822 S.W.2d 887 (Mo.App.1991), one of the jurors visited the scene of the accident, made observations, and reported his observations to other jurors. The trial judge denied the motion for new trial. The Court of Appeals reversed that ruling and ordered a new trial, citing *Middleton.*

■ In this case, although juror Zink stated that her observations did not enter into the deliberations, it must be assumed that her visit had an impact on her decision making, which in turn influenced her participation in the jury deliberations. This could have subtly affected the outcome of the case, and it would be virtually impossible for anyone to demonstrate the effect of her interactions on the deliberations, especially given the fact that there is no contemporaneous record of jury deliberations.

■ It is true that it is generally not an abuse of discretion to deny a motion for new trial where the juror did not obtain any "new, different or conflicting evidence" by visiting an accident scene. *Rogers v. Steuermann*, 552 S.W.2d 293, 295 (Mo. App.1977) (involving a foreperson who prepared a detailed drawing of the accident scene outside the courtroom and used it in deliberating; the drawing was based strictly on the evidence in the case and was conceded to be accurate). Defendants argue that the juror in question did not gain any new evidence because she has lived in the area all her life and has driven

---

2. In the more recent case of *Mathis v. Jones Store Company*, 952 S.W.2d 360, 363–365 (Mo.App.1997), for example, two jurors briefly discussed the evidence with one another before deliberations and during a trial break, with one of them saying "I don't see what the defense can do to counter what we have already heard," and making some reference to "the cleaning cart." The trial court was found not to have erred in refusing to grant a mistrial on the basis of the misconduct.

past the site on hundreds of occasions. Moreover, Zink testified that her visit to the scene during trial did not help her "to decide anything" and did not sway her vote. She did not discuss her visit with any of her fellow jurors, she said, and she stated that her visit to the scene played no part in the jury deliberations.

This is not a case in which a juror just happened to drive by an accident scene, without making specific observations, where the scene was on the juror's normal route. This is a case in which the juror specifically had in mind the purpose of making observations, including observations as to sight distance and other factors, in order to utilize those observations in deciding the case. She, in fact, stopped and made those observations. Despite her assertion that they made no difference, she admitted that they helped her to understand the testimony, which necessarily involved reconciling the testimony of the two competing experts.

Ultimately, the case is governed by *Middleton*. The errant juror in that case also contended that the measurements he made did not influence his verdict or change the result. There were even affidavits submitted by nine other jurors to the effect that any measurements juror Tudor may have made had no effect on the verdict. This Court nevertheless held that the trial court abused its discretion in denying the motion for new trial, because the presumption of prejudice was quite strong, and the statements of the jurors minimizing the effect of the misconduct were entitled to very little weight. In such a case, therefore, the presumption of prejudice is so strong that it can rarely be overcome by statements of the juror tending to minimize the effect of this conduct.

Furthermore, although the extent of the juror's evidence gathering was greater in *Middleton*, the more important factor in determining prejudice is the ma-

teriality of the evidence, and in both cases the evidence gathered pertained to a critical issue in the case. In that regard, the initial issue here, as noted, was defendant Hulse's sight distance—whether he could see the first collision in order to avoid the second collision. The jury's factual determination of the issue was essential to a resolution of the case, but the expert testimony on the issue was split. Hulse's expert testified that the slope of the highway prevented Hulse from seeing the first collision over the crest of a hill, but Travis' expert testified to the contrary. Under these circumstances, the presumption of prejudice from the juror's visit to the accident scene was not overcome.

### Conclusion

Because the presumption of prejudice was not overcome, the trial court abused its discretion in denying the motion for new trial. The judgment is reversed, and the case is remanded for a new trial.

All concur.