PHILLIP R. GARRISON, Judge.
 

 This is an appeal by Sharon S. McBride (“Plaintiff’) from a judgment entered on a jury verdict in favor of Joseph W. Farley, M.D. (“Dr. Farley”) and Emergency Physicians of Springfield, Inc. (“Emergency Physicians”) (collectively “Defendants”) in her suit based on medical negligence. We reverse and remand for a new trial.
 

 Plaintiff originally filed suit against Dr. Farley, Emergency Physicians and Lester E. Cox Medical Centers (“Cox”), but eventually settled her claim against Cox and dismissed it from the suit. The case went to trial in January 2001, but a mistrial was declared due to issues injected during voir dire. It was again tried in October 2001, but resulted in a hung jury and another mistrial was declared. The retrial of this case (the “last trial”) covered a period of twelve days and resulted in the verdict for Dr. Farley and Emergency Physicians from which this appeal flows.
 

 The determinative issue in this case is presented by the first of Plaintiffs two points on appeal. In that point she contends that the trial court erred in failing to grant her motion for new trial “because a court official engaged in misconduct by making statements outside of the courtroom proceedings to jurors that this case had been previously tried and resulted in a hung jury and that this trial was the second or third attempt at a jury trial[.]”
 

 Prior to the commencement of the last trial, Plaintiff filed a motion in limine requesting that the trial court preclude any mention of previous litigation or mistrials because it would inject prejudicial issues that were not relevant to the case. That motion was sustained by agreement of counsel. Following a nine to three jury verdict in favor of Defendants, Plaintiff filed a motion for new trial alleging that there had been misconduct by the jury coordinator in that he had told various jurors outside the courtroom that the case had previously been tried and resulted in a hung jury and that this was the second or third trial of the case. In support, Plaintiff filed affidavits from three of the jurors who served in this case.
 

 Gary G. Lindley (“Juror 1”) said in his affidavit that he was told by the jury coordinator on either the first or second day of trial that there had been at least one previous trial of the case that ended in a hung
 
 *392
 
 jury. He also said that the previous trial was again discussed in his presence two days before the jury began its deliberations.
 

 Richard W. Long’s (“Juror 2”) affidavit stated that he was told by Juror 1 two days before the case was submitted to the jury that there had previously been a hung jury in the case, and that this was the second or third attempt to try the case. He also said that this information was discussed among the jurors.
 

 Lana Sue Johnson (“Juror 3”) said in her affidavit that in the days prior to the deliberations, the jurors discussed the fact that there had previously been a hung jury in the case and that this was the second or third trial of the matter. She also said that another juror gave her and several other jurors this information five days before the case was submitted to the jury.
 

 When Plaintiffs motion for new trial was heard by the trial court, Plaintiff presented the above affidavits and called Juror 1 and Juror 2. Defendants objected to the affidavits and the jurors’ testimony, claiming that it was impermissible to introduce evidence to impeach the jury’s verdict.
 
 [1]
 
 The trial court took the objection under advisement and allowed the testimony, and Jurors 1 and 2 each confirmed the contents of their affidavits.
 
 [2]
 
 Juror 1 also testified that the jury coordinator made the statements about the previous hung jury at least twice, with the first being either on the day the jury was selected or the next trial day; that the statements were made in the presence of other people (presumably jurors); and that everyone on the jury panel knew about the previous hung jury.
 

 Juror 2 testified that the prior hung jury was discussed when the jury would assemble during recesses; that there was an ongoing discussion about the fact of the prior hung jury; that a “few guys” on the jury discussed it, including a juror named Baker (“Juror Baker”); that Juror Baker discussed it in such a fashion that it was derogatory or critical of the Plaintiffs case; and that the discussions caused Juror 2 to question the manner in which he was evaluating the evidence, and to be more critical of the evidence. Juror Baker joined in the verdict for Defendants, but Jurors 1, 2 and 3 did not. This appeal followed the denial of the motion for new trial by the trial court.
 

 A motion for a new trial based on the jury’s acquisition of extraneous evidence is left to the sound discretion of the trial court.
 
 Travis v. Stone,
 
 66 S.W.3d 1, 3 (Mo. banc 2002). The denial of a new trial may be reversed by the appellate court if it appears that the trial court abused its discretion in ruling on the issue of extraneous evidence or the issue of prejudice.
 
 Id.
 
 The same standard applies when the alleged misconduct is by a court official as opposed to one of the jurors.
 
 Rovak v. Schwartz,
 
 339 S.W.2d 756, 758 (Mo.1960).
 

 The general rule in Missouri is that a juror’s testimony or affidavit may not be used to impeach the verdict as to misconduct inside or outside the jury room, whether before or after the jury is discharged.
 
 Stotts v. Meyer,
 
 822 S.W.2d 887, 888-889 (Mo.App. E.D.1991). This is known as the “Mansfield rule.”
 
 Id.
 
 at 889. The Supreme Court of Missouri has interpreted that “rule” as meaning that no one
 
 *393
 
 is competent to impeach a verdict by the making of an affidavit as to “matters inherent in the verdict.”
 
 Baumle v. Smith,
 
 420 S.W.2d 341, 348 (Mo.1967). Examples of “matters inherent in the verdict,” given by the
 
 Baumle
 
 court, are:
 

 that the juror did not understand the law as contained in the court’s instructions, or that he did not join in the verdict, or that he voted a certain way due to a misconception of the evidence, or misunderstood the statements of a witness, or was mistaken in his calculations, or other matters ‘resting alone in the juror’s breast.’ A juror who has reached his conclusions on the basis of evidence presented for his consideration may not have his mental processes and innermost thoughts put on a slide for examination under the judicial microscope.
 

 Id.
 
 (internal citations omitted).
 
 See also Williams v. Daus,
 
 114 S.W.3d 351, 369 (Mo.App. S.D.2003) (the fact that jurors acted on improper motives, reasoning, beliefs or mental operations are matters inherent in the verdict), and
 
 Williams Carver Co. v. Poos Bros., Inc.,
 
 778 S.W.2d 684, 688 (Mo.App. W.D.1989) (“matters inherent in the verdict are not assailable by affidavit of anyone for the purpose of impeaching the verdict”).
 

 Extrinsic evidentiary facts, however, are distinguishable from matters inherent in the verdict and are not prohibited under the general rule against impeaching verdicts.
 
 Neighbors v. Wolfson,
 
 926 S.W.2d 35, 37 (Mo.App. E.D.1996). Thus, the court in
 
 Neighbors
 
 explained that to permit a verdict to be attacked on the ground of juror misconduct, the “juror testimony must allege that extrinsic evidentiary facts (i.e., facts bearing on trial issues but not properly introduced at trial) were interjected into the jury’s deliberations, rather than merely that jurors acted on improper motives, reasoning, beliefs or mental operations (the latter type of juror testimony is said to concern ‘matters inherent in the verdict’).”
 
 Id.
 

 In
 
 Williams,
 
 we acknowledged that a party may attack a verdict on the ground that juror misconduct occurred outside the courtroom, such as when a juror gathers evidence extraneous to the trial. 114 S.W.3d at 365. We explained, citing
 
 Neighbors,
 
 that extrinsic evidentiary facts enter a jury’s deliberations when, for example, a juror visits an accident scene without the court’s authorization and then shares his observations with his fellow jurors.
 
 Id.
 

 In
 
 Travis v. Stone,
 
 66 S.W.3d 1, 4 (Mo. banc 2002), the Supreme Court of Missouri further explained the rule by saying:
 

 However, it is permissible to elicit testimony about juror misconduct that occurred outside the jury room, such as the alleged gathering of extrinsic evidence at issue here. Even where the purpose of testimony regarding the misconduct (whether it occurred inside or outside the jury room) is to impeach the verdict, the party complaining of the testimony must make a timely and proper objection or else the issue is waived,
 

 (internal citations omitted). We interpret this explanation as being consistent with
 
 Baumle
 
 and meaning that the determining factor is not whether the misconduct occurred inside or outside the jury room but whether the purpose of the testimony is to “impeach the verdict.” In applying the rule, the
 
 Travis
 
 court found that the trial court abused its discretion in denying a motion for new trial because a juror visited the accident scene in question.
 
 Id.
 
 at 6.
 

 In
 
 Stotts v. Meyer,
 
 822 S.W.2d 887, 888 (Mo.App. E.D.1991), cited with approval in
 
 Travis,
 
 the appellant complained of the trial court’s denial of his motion for new trial based on a juror’s visit to the scene of the accident that was the subject of that case. The eastern district of this court
 
 *394
 
 reversed in an opinion that explained much of the law in this area.
 
 Id.
 
 at 892. It first reiterated that Missouri courts follow the “Mansfield rule” in that a juror’s testimony or affidavit may not be used to impeach the verdict as to misconduct inside or outside the jury room whether before or after the jury is discharged.
 
 Id.
 
 at 888-89. The
 
 Stotts
 
 court, in considering whether the conduct in question had the improper effect of impeaching the verdict, explained that the juror’s conduct did not come within the purview of matters “inherent in the verdict,” citing
 
 Baumle,
 
 and that the juror’s testimony concerning his visit to the scene was competent and admissible since it did not extend to the “subjective reasoning behind the jury verdict.”
 
 Id.
 
 at 890.
 

 In
 
 Rovak,
 
 a juror, in the presence of the other jurors, made a comment to the female court reporter that he would like to be a juror in a case where she was a party. 339 S.W.2d at 758. The court reporter responded, in the presence of all the jurors, that “I wouldn’t sue anybody.”
 
 Id.
 
 There the trial court concluded that the statement was merely “banter,” did not result in prejudice, and denied a mistrial.
 
 Id.
 
 In affirming that denial, the appellate court found nothing to indicate, among other things, that the exchange had an evil effect on the proceedings, or that the remark related to, or was considered by any juror to be directed at, the case on trial.
 
 Id.
 
 at 758-59. We find this case to be distinguishable from the instant case, however, because the jury coordinator’s conduct goes well beyond mere banter and was directed to this case.
 

 Defendants contend that the “extraneous evidence exception” does not apply here because Plaintiff does not allege that a juror actively gathered information extraneous to the trial or that the jury coordinator made statements introducing facts bearing on trial issues. We disagree. While the information in the instant case did not come to the jurors through the misconduct of any of their number, but rather from a court official, the same analysis should apply. Since the prohibition is against the receipt of extrinsic evidentiary facts (facts bearing on trial issues but not properly introduced at trial), it should not matter whether the source of the information is from outside the jury, such as from a court official, or from other jurors.
 

 As to whether the information furnished to this jury constituted facts bearing on trial issues, it is significant that Plaintiff had the burden of proving her claim against Defendants. Defendants’ counsel, in his opening statement, informed the jury that Plaintiff had the burden of proof, and must convince them that Defendants “did something wrong and that it caused ... [Plaintiff] to be injured.” Although it is not a part of this record, we assume that the trial court gave MAI 3.01 which is required to be given in every case. That instruction tells the jury that the burden is upon the party who relies upon propositions of fact submitted to them to cause them “to believe that such proposition is more likely to be true than not true.” MAI 3.01 (2002). It concludes, “[i]f the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.”
 
 Id.
 
 In closing argument, Defendants’ counsel reiterated that the burden of proof was on Plaintiff and that she could not meet that burden in this case. In short, the jury was clearly informed that Plaintiff had the burden of proof and that her failure to meet that burden must result in a verdict for Defendants.
 

 The information provided to the jurors by the jury coordinator dealt with a trial issue, i.e., whether Plaintiff could prove Defendants’ liability for her claimed damages. The fact that there had been an
 
 *395
 
 earlier trial resulting in a hung jury effectively communicated to this jury that Plaintiff had been unable to convince at least nine of those jurors that she had met her burden of proof and was entitled to a verdict. This information, in the present context, goes beyond matters inherent in this jury’s verdict and involves facts bearing on trial issues that were not properly introduced at trial. The information involved here was obtained by the jurors outside the courtroom and is the equivalent of obtaining evidence extraneous to the trial. There is no contention that the information conveyed by the jury coordinator would have been relevant in the trial of this case. Certainly, it would not have been.
 

 Plaintiff cites
 
 State v. Franks,
 
 702 S.W.2d 853 (Mo.App. E.D.1985), involving a factual situation very similar to the instant case. There, a juror reported that a deputy sheriff had told four other jurors that the case had been tried twice before and ended in a hung jury each time.
 
 Id. at
 
 856. The four jurors had expressed immediate concerns about the possibility of reaching a verdict, and the infoi'mation was passed along to all of the other jurors.
 
 Id.
 
 A juror informed the trial court about the information they had learned after the jury had been impaneled and sworn.
 
 Id.
 
 The trial court granted a mistrial, telling the jury that “the information they had received may make it impossible to be fair and impartial and may confuse the jurors to an extent that would affect their judgment.”
 
 Id.
 
 The issue arose in
 
 Franks,
 
 however, in connection with the defendant’s claim that the trial court erred in granting the mistrial, and that the improper grant of that relief should bar a new trial on the basis of double jeopardy.
 
 Id.
 

 Plaintiff argues that
 
 Franks
 
 is particularly significant even though it was a criminal case. In
 
 Franks,
 
 the court of appeals noted that a defendant is “not placed twice in jeopardy where a mistrial is declared, even over his objection, if there exists grounds of
 
 manifest necessity
 
 or the ends of public justice would otherwise be defeated.”
 
 Id.
 
 at 856 (emphasis added). The
 
 Franks
 
 court also cited
 
 Parker v. U.S.,
 
 507 F.2d 587 (8th Cir.1974), for the proposition that “[wjhere prejudicial information has reached the jurors there is
 
 manifest necessity
 
 which will justify aborting the trial.” 702 S.W.2d at 856 (emphasis added).
 

 The concept of “manifest necessity” was further discussed in
 
 State v. Tiger,
 
 972 S.W.2d 385, 389 (Mo.App. W.D.1998), which, like
 
 Franks,
 
 involved the effect of a mistrial in a criminal case when the defendant claimed a subsequent trial would subject him to double jeopardy. The appellate court held that without a criminal defendant’s consent to a mistrial, the mistrial bars retrial unless the court felt that there was a “manifest necessity” for a mistrial.
 
 Id.
 
 In explaining “manifest necessity” the court said, “if continuing with the trial would inevitably result in a reversal on appeal and remand for a new trial, then there is no point to allowing the process to continue; manifest necessity requires a mistrial to avoid the farce of continuing the trial in the face of a certain reversal.”
 
 Id.
 
 at 392. Consequently, Plaintiff argues here that
 
 Franks
 
 stands for the fact that a factual scenario like that in the instant case creates a “manifest necessity” for relief. We agree. The fact that the information in question did not become known until after the trial, rather than at the beginning as in
 
 Franks,
 
 does not diminish its seriousness as it relates to the fairness of the trial.
 

 Defendants argue here that Plaintiff did not meet her burden to prove that prejudice resulted from the statements attributed to the jury coordinator. They cite
 
 Williams,
 
 114 S.W.3d at 366, for the proposition that in a motion for new trial based upon allegations of juror misconduct, the
 
 *396
 
 burden normally is upon the contesting party to show the misconduct and that it was prejudicial. Defendants candidly acknowledge that
 
 Williams,
 
 quoting
 
 Travis,
 
 holds that “[o]nce it is established that a juror has gathered evidence extraneous to the trial, prejudice will ordinarily be presumed, and the burden is on the respondent in such a case to overcome the presumption of prejudice.”
 
 Id,
 
 In so holding,
 
 Travis
 
 relied on
 
 Middleton v. Kansas City Pub. Serv. Co.,
 
 348 Mo. 107, 152 S.W.2d 154, 158-60 (1941), which in turn held that once it is established that a juror has gathered evidence extraneous to the trial, prejudice will ordinarily be presumed, and the burden is on the other party to overcome the presumption of prejudice. 66 S.W.3d at 4. In
 
 Travis,
 
 the Supreme Court reversed and remanded for a new trial even though the juror said she did not discuss her visit to the accident scene with other jurors, and it played no part in the jury deliberations.
 
 Id.
 
 at 6. It found that the presumption of prejudice was so strong that it was not overcome by the juror’s statements tending to minimize the effect of her conduct, especially considering the materiality of the evidence concerning a critical issue in the case.
 
 Id.
 
 This was in keeping with the Court’s statement that “[t]he appellate court may reverse the lower court’s denial of a new trial if it appears that the trial court abused its discretion in ruling on the issue of extraneous evidence or the issue of prejudice.”
 
 Id.
 
 at 3.
 

 As indicated above, the ultimate issues in this case were whether Defendants were negligent in their care and treatment of Plaintiff, and whether she suffered damage as a result. The information provided by the jury coordinator reflected on those ultimate issues by indicating that, in light of the fact that Plaintiff had the burden of proof, Plaintiff had been unable to persuade at least nine of the jurors in the earlier trial that she had met that burden. This was an extrinsic evidentiary fact (one bearing on trial issues) that was not properly introduced at trial, and did not concern matters inherent in the verdict. That being the case, there was a presumption of prejudice and the burden shifted to Defendants to overcome that presumption.
 
 Id.
 
 at 3. They did nothing to do so, and do not claim that they did.
 

 Defendants also argue that “[ujpon hearing [Plaintiffs] inadmissible, contradictory and ambiguous evidence at the hearing on [Plaintiffs] Motion for New Trial, [the trial judge] was free to determine that the jury coordinator did not make any statements regarding the procedural history of the case, or that any such statements did not prejudice [Plaintiff].” This is in keeping with Defendants’ contention, relying on
 
 Williams,
 
 that we should indulge every reasonable inference in favor of the trial court’s ruling, and that matters such as the weight of the evidence, credibility of the witnesses and resolution of conflicts of the testimony are not subject to our review. 114 S.W.3d at 369. We do not agree with Defendants’ attempt to apply those principles here.
 

 The trial court merely entered an order stating that the “motion for new trial is overruled” without indicating whether the ruling was based on credibility determinations or an application of the law. Some of the evidence concerning the statements complained of was in the form of affidavits that were uncontradicted. With reference to that evidence, deference to the trial court’s assessment of credibility does not apply, and we will make our own independent evaluation of the trial court’s application of the law.
 
 Burns v. Plaza West Associates,
 
 979 S.W.2d 540, 546 (Mo.App. W.D.1998). Additionally, any such deference to the trial court does not apply where there is no factual dispute and the contentions presented are questions of law.
 
 Howard v. Missouri State Bd. of Edu.,
 
 913
 
 *397
 
 S.W.2d 887, 888-89, (Mo.App. S.D.1995). Here, the evidence about the statements made by the jury coordinator to the jurors was unequivocal and uncontradicted. Such a record would not support a finding that the statements were not made.
 
 See Reinert v. Director of Revenue,
 
 894 S.W.2d 162, 164 (Mo. banc 1995); and
 
 Hollars v. Church of God of Apostolic Faith,
 
 596 S.W.2d 73, 74 (Mo.App. S.D.1980).
 

 “Where the trial court has refused to grant a new trial on account of alleged misconduct, the revision of the appellate court will be exercised more freely than where a new trial has been granted.”
 
 Fitzpatrick v. St. Louis-San Francisco Ry. Co.,
 
 327 S.W.2d 801, 808 (Mo.1959). Accordingly, we hold that the testimony and affidavits of the jurors relating to the statements of the jury coordinator constituted evidence that extraneous evidence was presented to the jury, that such evidence created a presumption of prejudice that was not overcome, that the trial court abused its discretion in denying Plaintiffs motion for new trial on the basis of that conduct, and that, therefore, the case must be reversed and remanded for a new trial.
 

 Plaintiff also presents a second point on this appeal relating to the admission of expert testimony. She argues that an expert was allowed to testify, over her objection, to opinions that did not meet the requirements of
 
 Frye v. United States,
 
 293 F. 1013 (D.C.Cir.1923) or Section 490.065(3), RSMo (2000), in that the opinions were neither shown to have wide scientific approval nor to be based on the kind of facts or data reasonably relied on by experts in the field. We need not review this allegation of error.
 

 The decision to admit expert testimony is a matter of trial court discretion.
 
 McGuire v. Seltsam,
 
 138 S.W.3d 718, 721 (Mo. banc 2004). We have no way of discerning what evidence will be presented on this issue, or in what manner, on retrial. Likewise, it would be speculation to assume that the same witness would testify on retrial and give the same type of testimony with the same foundation. Additionally, a decision on this contention could be considered dicta since we have already determined that a reversal and new trial must occur. To attempt to review the point presented would, in essence, be an advisory opinion which, absent rare exceptions concerning matters of public interest likely to recur, appellate courts do not render.
 
 Trimble v. Pracna,
 
 51 S.W.3d 481, 503 (Mo.App. S.D.2001).
 

 It should be noted, however, that since the briefs were filed in this case, the Supreme Court of Missouri decided
 
 State Bd. of Reg. for Healing Arts v. McDonagh,
 
 123 S.W.3d 146 (Mo. banc 2003). That opinion may be of guidance to the trial court and counsel as it relates to the admissibility of expert opinion testimony on retrial.
 

 The judgment in this case is reversed and the case remanded for a new trial.
 

 BARNEY, P.J„ and PREWITT, J., concur.
 

 [1]
 

 . The objection to the affidavits was written and filed with the trial court, but a copy of that objection is not in the record before us. We gather from the colloquy with the trial court, however, that the basis of the objection was the prohibition against impeaching the verdict.
 

 [2]
 

 . There is no indication in the record before us that the trial court ever ruled on that objection.