Howard J. SELF, Appellant,

v.

William BRUNSON, Sound & Lighting Associates, Inc., Respondents,

and

Production Support Services, Inc., Defendant.

No. ED 87156.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 26, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 25, 2007.

Application for Transfer Denied Feb. 27, 2007.

ing that Brunson was backing in the tractor-trailer, entered the warehouse and continued loading equipment.

ing Brunson did not have a spotter, decided to assist Brunson while he was backing-in his tractor-trailer. To that end, Self positioned himself behind the tractor-trailer on the ground and just "slightly caddy-corner to [the] back left [-] hand side." Although Self admitted he did not advise Brunson that he planned to function as Brunson's spotter, Self testified that he observed Brunson scanning his mirrors and "believed" that Brunson was looking at him while backing in the dock. Brunson acknowledged that although he might have noticed Self, he was focused on avoiding the various obstacles in the dock bay, and did not observe Self in a dangerous position in relation to the tractor-trailer. In addition, Brunson testified that he did not see Self give him any directional signals.

As Brunson maneuvered his tractor-trailer into the dock, his speed was approximately 1–2 miles per hour. At some point, one of the doors on the tractor-trailer opened and caught Self's left arm at the shoulder crushing it between Brunson's tractor-trailer door and the warehouse building. Meanwhile, Brunson felt a "bump," stopped the tractor-trailer, exited, and began walking toward the warehouse. At that time, he was unaware that Self was pinned between the building and the truck door.

A PSS employee heard Self screaming. The employee ran toward Brunson and advised him to move his tractor-trailer forward. Brunson complied and Self testified that he fell from the dock onto the ground. Someone called an ambulance which arrived and transported Self to the hospital. Over the course of several years, Self underwent multiple surgeries on his shoulder. At the time of trial, Self was unable to work in the same capacity as he had prior to the incident.

Self sued Brunson for his personal injuries alleging Brunson was negligent in failing to keep a careful lookout. Self also sued PSS alleging that the PSS warehouse was not reasonably safe. Prior to trial, Self settled his claims against PSS and dismissed PSS from the lawsuit. Self's claims against Brunson were tried to a jury. On the day of trial, Self filed a motion *in limine*, which was granted by the trial court, to exclude any reference to the PSS settlement at trial.

The trial court submitted the following verdict director, in relevant part:

> In your verdict you must assess a percentage of fault to Defendants William Brunson and Sound and Lighting Associates, Inc. whether or not Plaintiff partly was at fault, if you believe:
>
> First, Defendants William Brunson failed to keep a careful lookout while operating his tractor-trailer, and
>
> Second, Defendant William Brunson was thereby negligent . . .
>
> . . .

The trial court used the following verdict form:

> Note: Complete the following paragraph by filling in the blanks as required by your verdict. If you assess a percentage of fault to any of those listed below, write in a percentage not greater than 100%, otherwise write "zero" next to that name. If you assess a percentage of fault to any of those listed below, the total of such percentages must be 100%.
>
> On the claim of Plaintiff Howard "Chip" Self for personal injury, we the undersigned jurors, assess percentages of fault as follows:

| | | |
|---|---|---|
| Defendant William Brunson and Sound and Lighting Associates, Inc. | _____% | (zero to 100%) |
| Plaintiff Howard "Chip" Self | _____% | (zero to 100%) |
| TOTAL | _____% | (zero OR 100%) |

Note: Complete the following paragraph if you assessed a percentage of fault to Defendants:

We, the undersigned jurors, find the total amount of Plaintiff's damages, disregarding any fault on the part of the Plaintiff, to be $ _____ (*stating the amount* ).

Note: The judge will reduce the total amount of Plaintiff's damages by any percentage of fault you assess to Plaintiff.

. . .

The jury returned a verdict which assessed zero percentage of fault to Brunson and Sound and Lighting Associates, Inc., zero percentage of fault to Self and awarded zero damages to Self. The trial court entered judgment in favor of Brunson and Sound and Lighting Associates, Inc.

Following trial, Self filed a Motion for Judgment Notwithstanding the Verdict (JNOV) or in the alternative, Motion for a New Trial. The trial court denied both motions. This appeal followed.

### Standard of Review

The standard of review for the denial of a motion for JNOV is "essentially the same as for review of denial of a motion for directed verdict." *Boyer v. Sinclair & Rush, Inc.*, 67 S.W.3d 627, 632 (Mo.App. E.D.2002). To determine whether the evidence was sufficient to support a jury's verdict, we view the evidence in the light most favorable to the result reached by the jury, disregarding evidence and inferences which conflict with the verdict. *Id.* This court is not permitted to weigh the evidence. *Lee v. Hartwig*, 848 S.W.2d 496, 502 (Mo.App. W.D.1992).

The standard of review for the denial of a motion for new trial is abuse of discretion. *M.E.S. v. Daughters of Charity Services of St. Louis*, 975 S.W.2d 477, 482 (Mo.App. E.D.1998). Grant or denial of "a motion for new trial based on a juror's acquisition of extraneous evidence, is left to the sound discretion of the trial court." *Travis v. Stone*, 66 S.W.3d 1, 3 (Mo. banc 2002). We review the evidence in the light most favorable to the verdict and do not consider matters such as the weight of the evidence, the credibility of the witnesses, or the resolution of conflicting testimony. *Id.*

### Analysis

In Self's first point, he argues that the verdict was against the weight of the evidence because, in light of Brunson's admissions, no reasonable jury could find that Brunson "bore no fault" for the incident. More specifically, Self contends that Brunson "made admissions by which he essentially admitted fault to the accident on August 17, 2000 and Mr. Self's subsequent injuries."

In support of his point, Self claims that several statements Brunson made at trial are "critical admissions." Among these statements are the following: Brunson previously backed tractor-trailers into the PSS warehouse; Brunson believed he did not need a spotter when using the PSS dock; PSS commonly provided spotters; Brunson did not pay attention to the spotters when backing into the PSS dock; if the spotter can see the driver's face in one of the driver's side-view mirrors, a driver who is paying attention can see the spotter; and as Brunson backed-up, there were no blind spots except at the tractor wheels. Self argues that these "admissions" prove the following: if Brunson was operating his tractor-trailer safely, he would have seen Self; because he did not see Self, Brunson "must not have been operating his tractor-trailer safely;" accordingly, Brunson admitted negligence.

■ Self's argument belies a misunderstanding of the meaning and function of the term "admission." It is well-established that "[a] true judicial admission is one made in court or prepatory to trial by a party or his attorney that concedes, for the purposes of that particular trial, the truth of some alleged fact so that one party need offer no evidence to prove it, and the other party ordinarily is not allowed to disprove it." *Meekins v. St. John's Regional Health Center, Inc.*, 149 S.W.3d 525, 531 (Mo.App. S.D.2004) (internal citation omitted). Moreover, "[a] judicial admission removes the proposition in question from the field of disputed issues in the case." *Id.* For a defendant's testimony to constitute an admission "upon which liability could hang, it must clearly and unequivocally admit facts which bind defendant inescapably to liability as a matter of law." *Lee,* 848 S.W.2d at 501 (internal citation omitted).

There is nothing in the record before us to suggest that Brunson's testimony constituted an admission of fault sufficient to either remove the issue of Brunson's negligence from the jury's consideration or to support a directed verdict in favor of Self. The jury was asked, in the verdict director, to assess a percentage of fault to Brunson and Sound and Lighting Associates, Inc. if it believed that Brunson "failed to keep a careful lookout." Although there was certainly evidence from which a jury could have reached the conclusion that Brunson failed to keep a careful lookout, Brunson also adduced evidence to the contrary. In that regard, the jury heard evidence that Brunson was constantly looking in his mirrors, a pole obstructed his view, and Self did not tell Brunson that he was going to act as his spotter and stand behind the tractor-trailer.

As we noted above, "issues relating to the weight, credibility, or the resolution of conflicts in testimony are matters for a jury's determination and not matters for appellate review." *Lashmet v. McQueary,* 954 S.W.2d 546, 552 (Mo.App. S.D.1997). Here, there was sufficient evidence presented by both Self and Brunson for a jury to resolve the question of Brunson's negligence and more importantly, given the verdict here, to find in favor of Brunson and Sound and Lighting Associates, Inc. We decline Self's invitation to re-weigh the evidence. Point denied.

■ In Self's second point, he argues that the trial court abused its discretion in entering judgment in favor of Brunson because the jury returned an inconsistent, ambiguous, and self-destructive verdict. More specifically, Self contends that: (1) the jury did not assess fault to either party; and (2) the jury considered extrinsic facts and improperly created its own verdict form.

Self argues that because the jury completed the verdict form with zeros in the blank spaces provided for assessment of percentage of fault, the trial court abused its discretion in entering judgment for Brunson. Self does not contend that the trial court used the wrong verdict form. Indeed, it is undisputed that the trial court properly used a verdict form based upon MAI 37.07. MAI 37.07 expressly directs the jury to fill-in the top two blanks in the upper portion using "(zero to 100%)." The form further directs the jury to complete the blank provided for the total percentages of fault, as follows: "(zero *OR* 100%)" (emphasis in original). When we previously addressed the question Self raises here in connection with MAI 37.09 we stated:

> It was within the purview of the jury to assess zero percent fault against each party. The form of the verdict was MAI 37.09 [1991 New] and it explicitly allowed the jury to find zero percent fault against both plaintiff and defendant.

The verdict form directed the jury to award plaintiff damages only if it found a percentage of fault against defendant. Because the jury did not assess a percentage of fault against defendant, it did not award damages to plaintiff.

*Hitt v. Martin,* 872 S.W.2d 121, 123 (Mo. App. E.D.1994). In *Hitt,* we relied on *Miller v. Hanna,* which held that MAI 37.07 "specifically allowed the jury to find zero percent fault against both parties." 757 S.W.2d 301, 304 (Mo.App.W.D.1988). Accordingly, we do not agree that by assessing zero fault to both parties, the jury rendered an inconsistent, ambiguous or self-destructive verdict.

■ Self also asserts that the verdict was inconsistent, ambiguous and self-destructive because the jury considered extrinsic facts when, during deliberations, it improperly created its own verdict form in the jury room upon which it assessed fault to PSS. According to post-trial affidavits attached by Self and his lawyer to Self's post-trial motions, Self spoke with a juror after the trial who stated that "the jurors created their own verdict form by drawing on the dry erase board during their deliberations in the jury room." Moreover, the juror advised that the jury used the dry erase board to list Brunson, Self, and PSS "as the parties against whom they assessed fault."

Review of the verdict form reveals that the jury did not change the text or format in any way and completed the blanks exactly in the manner instructed by the form. In particular, PSS does not appear anywhere on the verdict form that was signed by the jurors and tendered to the trial court.

■ Even assuming, for the purposes of argument, that drawing percentages of fault on a dry erase board constitutes an improper jury-created verdict form, the verdict is not defective. An attack on a

jury's verdict is permitted when two conditions are met: (1) "the party in whose favor the verdict was returned must acquiesce in the proposition that the juror is competent to give such testimony" and (2) "the juror testimony must allege that extrinsic evidentiary facts were interjected into the jury's deliberations, rather than merely jurors acted on improper motives, reasoning, beliefs or mental operations." (internal citations omitted). *Neighbors v. Wolfson,* 926 S.W.2d 35, 37 (Mo.App. E.D. 1996). An affidavit from a juror or any other person may not be used to impeach the verdict as to misconduct inside or outside the jury room, whether before or after the jury is discharged, as to "matters inherent in the verdict." *See McBride v. Farley,* 154 S.W.3d 404, 407 (Mo.App. S.D. 2004) citing *Baumle v. Smith,* 420 S.W.2d 341, 348 (Mo. banc 1967). In *McBride,* the Southern District, relying on *Baumle, supra,* provided examples of "matters inherent in the verdict":

> that the juror did not understand the law as contained in the court's instructions, or that he did not join in the verdict, or that he voted a certain way due to a misconception of the evidence, or misunderstood the statements of a witness, or was mistaken in his calculations, or other matters resting alone in the juror's breast.

*Id.* In *Neighbors,* we provided the following examples of extrinsic evidentiary facts:

> a juror visits an accident scene without the court's authorization and then shares his observation with fellow jurors, or when a juror brings a newspaper into the jury room and reads an article from it to the venire.

(internal citations omitted) *Id.*

Applying the criteria identified in *Neighbors,* it is clear that the trial court did not err in accepting the verdict and entering

judgment consistent with the jury's determination reflected on the verdict form. Neither Self's affidavit nor his counsel's was competent to impeach the verdict because their allegations involved "matters inherent in the verdict," rather than extrinsic evidentiary facts. At trial, both parties introduced a great deal of evidence regarding PSS. In particular, Self called PSS's employees as witnesses and questioned them extensively about PSS's procedures for backing-in tractor-trailers, including the use of spotters. Additionally, Self elicited testimony about PSS's "rickety dock", the dock's measurements, narrowness, lack of signs and other features. Thus, information about PSS was transmitted to the jury during the trial. To the extent, the jury used the information to consider PSS's fault during their deliberations, such conduct, at most, constitutes a misunderstanding of the law "as contained in the court's instructions" and therefore is a matter inherent in the verdict. *McBride*, 154 S.W.3d at 407. Point denied.

In his third point, Self argues that the trial court abused its discretion when it excluded testimony from Brunson evidencing a belief that PSS was not at fault. Self contends that Brunson's statement was relevant in light of the jury's consideration of PSS's percentage of fault. Specifically, Self argues that had the jury heard Brunson's statement, it might not have speculated about PSS's fault and would have avoided rendering an inconsistent verdict.

In the first place, as discussed above, we do not agree that the jury rendered an inconsistent verdict. In any event, a trial court has considerable discretion in determining whether evidence should be admitted or excluded. *Thornton v. Gray Automotive Parts Co.*, 62 S.W.3d 575, 583 (Mo. App.W.D.2001). We give great deference to trial court evidentiary rulings and will not overturn such decisions absent an abuse of discretion. *Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo.banc 1993). To obtain a reversal based upon the exclusion of evidence, Self must demonstrate that the excluded evidence would have materially affected the merits of his cause of action. *See Romeo v. Jones*, 144 S.W.3d 324, 332 (Mo.App. E.D.2004). Here, Self has failed to establish how Brunson's testimony would have changed the outcome of the trial. Accordingly, the trial court did not abuse its discretion in excluding evidence that Brunson believed PSS was not at fault. Point denied.

### Conclusion

The judgment is affirmed.

BOOKER T. SHAW, C.J., and NANNETTE A. BAKER, J., Concur.