STATE of Missouri, Respondent,

v.

Nathaniel J. STEPHENS, Appellant.

No. WD 60481.

Missouri Court of Appeals,
Western District.

Nov. 19, 2002.

Susan L. Hogan, District Assistant Appellate Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Stephanie Morrell, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before ULRICH, P.J., and SMITH and HARDWICK, JJ.

EDWIN H. SMITH, Judge.

Nathaniel J. Stephens appeals the judgment of his convictions, after a jury trial in the Circuit Court of Jackson County, of forcible rape, § 566.030;[1] two counts of assault in the first degree, § 565.050; kidnapping, § 565.110; and robbery in the second degree, § 569.030. As a result of his convictions, he was sentenced as a prior and persistent offender, § 558.016, to three consecutive life sentences in the Missouri Department of Corrections for rape, one count of assault, and kidnapping, respectively, and to concurrent sentences of fifteen years for the remaining count of assault and robbery, which sentences he was ordered to serve concurrently with his life sentences.

The appellant raises two points on appeal. In Point I, he claims that the trial court erred in overruling his motion for new trial because he was deprived of due process by reason of juror misconduct in that during a recess in jury deliberations, a juror conducted an "independent investigation," resulting in the appellant's being convicted on evidence that was outside the record. In Point II, he claims that the trial court plainly erred in sentencing him as a persistent offender to life imprisonment for kidnapping because he was not charged as a persistent offender in that, during the prior and persistent offender hearing, the State amended the felony information to charge him as a prior offender only.

We affirm the judgment in all respects, except with respect to the appellant's sentence for kidnapping, which is vacated and the case remanded for resentencing thereon in accordance with this opinion.

### Facts

On October 4, 1999, Melissa Parkey, the victim, went on a date with the appellant, whom she had met while he was working as a clerk at a convenience store located near her residence in Kansas City, Missouri. As agreed, Parkey met the appellant at the convenience store around midnight, where they agreed to go to the Station Casino in Parkey's car. On the way to the casino, they purchased some marijuana from a friend of the appellant and smoked it. After spending a short time at the casino, Parkey and the appellant drove to the Hypermart to buy the appellant some clothes. Upon leaving the Hypermart, Parkey told the appellant that she needed to go home and asked him where she should drop him off. The appellant asked Parkey to take him to an apartment complex near the intersection of 95th and Lydia in Kansas City, Missouri.

After they arrived at the apartment complex and talked for a few minutes in the parking lot, Parkey told the appellant that it was time for her to go home. The appellant then demanded oral sex from Parkey and became very angry when she refused. Parkey attempted to start her car, but the appellant took the keys out of the ignition, exited the vehicle and walked toward the apartment complex. Parkey followed the appellant, hoping to find a telephone, but found herself in a laundry room where the appellant pushed her

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

against a wall and raped her. Afterward, Parkey grabbed her keys out of the appellant's pants and went back to her car. The appellant followed her into the vehicle. The appellant told Parkey that he would let her go home if she would take him to an apartment on the other side of the parking lot, which she did.

After Parkey stopped in front of the apartment, the appellant asked her if she was going to call the police. When Parkey began crying and did not respond, the appellant hit her three times in the face, rendering her unconscious. When she regained consciousness, Parkey noticed that she was in a dark, wooded area. The appellant then strangled her until she passed out once again. Upon regaining consciousness, Parkey found that the appellant and her car were gone. She then walked to a nearby house and asked the residents to call the police, which they did.

On November 8, 1999, the appellant was charged by indictment in the Circuit Court of Jackson County, as a prior and persistent offender, under § 558.016, with forcible rape, § 566.030; two counts of assault in the first degree, § 565.050; kidnapping, § 565.110; and robbery in the second degree, § 569.030. The appellant's case proceeded to a jury trial, which commenced on June 18, 2001.

Prior to hearing evidence on the offenses charged, the trial court held a hearing to determine whether the appellant was a prior and persistent offender as charged. During this hearing, the appellant objected to the State's attempt to introduce the record of a prior felony conviction in Illinois, alleging that it was not properly certified. Without ruling on the appellant's objection, the trial court took the matter of the appellant's offender status under advisement. At the close of all the evidence, the court announced its intention to rule on the question of whether the appellant was a prior and persistent offender. Before the court could rule, the State requested leave to amend the information to drop the persistent offender charge, which the court granted. The appellant's case was submitted on all five counts charged on June 20, 2001, and, after two days of deliberations, the jury returned guilty verdicts on each.

The appellant filed a "Motion for Judgment of Acquittal, or in the Alternative, for a New Trial" on July 16, 2001. On that same date, the assistant prosecutor assigned to the appellant's case sent a letter to the trial court and counsel for the appellant informing them that she had spoken with a juror at the conclusion of the trial, who informed her that an unnamed juror, prior to deliberations resuming on the morning of June 21, 2001, had driven through the park where the victim had regained consciousness. At the hearing on the appellant's motion for new trial, although not included in his motion, the appellant argued, based on the letter from the assistant prosecutor, that the independent investigation conducted by the unnamed juror constituted juror misconduct, entitling him to a new trial. The State objected to a new trial being awarded on that basis, arguing that a jury's verdict could not be impeached with testimony of a juror. The trial court overruled the appellant's motion for new trial, without explanation. The court then sentenced the appellant as a prior and persistent offender to three consecutive life sentences on his convictions for forcible rape, kidnapping, and one count of assault. As to his convictions on the remaining count of assault and the one count of robbery, he was sentenced to concurrent sentences of fifteen years, which were ordered to run concurrently with his life sentences.

This appeal follows.

## I.

In Point I, the appellant claims that the trial court erred in overruling his motion for new trial because he was deprived of due process by reason of juror misconduct in that during a recess in jury deliberations, a juror conducted an "independent investigation," resulting in his being convicted on evidence that was outside the record. In claiming as he does in this point, the appellant only challenges his convictions for "rape, kidnapping, and assault by strangling." He does not challenge his other convictions for assault and robbery.

In determining our standard of review, we first note that although the appellant raised the claim of error in this point during the hearing on his motion for a new trial, he did not raise it in his motion. Except for questions concerning jurisdiction, the sufficiency of the charging instrument, and the sufficiency of the evidence to convict, allegations of error in a jury-tried case must be included in a motion for new trial to be preserved for appellate review. Rule 29.11(d).[2] A claim of error not raised in a motion for new trial is not preserved for our review, *State v. Pennington,* 24 S.W.3d 185, 188 (Mo.App. 2000), except for plain error under Rule 30.20. *State v. Taylor,* 944 S.W.2d 925, 932 (Mo. *banc* 1997). The appellant asserts in his brief, however, that it was not possible for him to include his claim of error in his motion for new trial in that he was not aware of the alleged misconduct until after the filing deadline had passed for filing his motion for new trial in that the State, which was made aware of the alleged juror misconduct in question immediately after trial, did not disclose the misconduct to the appellant until after the

time for filing of the motion had expired. Despite this circumstance, Rule 29.11, governing the filing of motions for a new trial in criminal cases, does not make an exception extending the time to file a motion, even where the newly discovered evidence on which the motion for a new trial is predicated is not discovered until after the filing deadline has passed. The filing deadline of Rule 29.11(b), requiring a motion for new trial to be filed within fifteen days after the return of the verdict, unless the deadline is extended to twenty-five days, has been interpreted as being absolute such that once the deadline of fifteen or twenty-five days has passed, a motion may not be filed or amended even to allege, as a basis for a new trial, newly discovered evidence which was not discoverable until after the filing deadline had passed. *State v. Garner,* 976 S.W.2d 57, 60 (Mo.App.1998). Thus, our review, if any, of the appellant's claim in this point would be limited to plain error review, under Rule 30.20. *Taylor,* 944 S.W.2d at 932; *State v. Yates,* 982 S.W.2d 767, 769 (Mo.App.1998).

Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr,* 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the ap-

---

**2.** All rule references are to Missouri Rules of Criminal Procedure (2002), unless otherwise indicated.

pellant's claim substantial grounds exist for believing that the trial court committed a "plain" error affecting the appellant's substantial rights, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley,* 51 S.W.3d 44, 53 (Mo.App. 2001). "Plain" error for purposes of Rule 30.20, is error that is evident, obvious and clear. *State v. Hibler,* 21 S.W.3d 87, 96 (Mo.App.2000).

■ If the appellate court chooses to exercise its discretion and conduct plain error review, the process involves two steps. First, the court must determine whether the trial court committed error affecting substantial rights of the appellant, that was evident, obvious and clear. *Id.* As in the case of regular error, not every plain error requires reversal. *Carr,* 50 S.W.3d at 853. In the case of regular error, to be reversible, the error must have prejudiced the appellant. *State v. Taylor,* 67 S.W.3d 713, 715 (Mo.App.2002). Likewise, in the case of plain error, the error must have prejudiced the appellant, except that such prejudice must rise to the higher level of manifest injustice or a miscarriage of justice. *State v. Cole,* 71 S.W.3d 163, 170 (Mo. *banc* 2002). Thus, even if obvious and clear error is found in the first step of the procedure, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Hibler,* 21 S.W.3d at 96.

■ The question of whether to grant a motion for new trial is left to the sound discretion of the trial court. *State v. Mayes,* 63 S.W.3d 615, 625 (Mo. *banc* 2001). The trial court abuses its discretion when its ruling is clearly against the logic of the existing circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *State v. Christeson,* 50 S.W.3d 251, 261 (Mo. *banc* 2001). Thus,

in the context of plain error review, we will reverse the trial court's denial of the appellant's motion for new trial only if we determine that its ruling was an obvious and clear abuse of discretion, which affected a substantial right of the appellant and resulted in manifest injustice or miscarriage of justice.

■ At the hearing on the appellant's motion for a new trial, he introduced the letter his trial counsel had received from the assistant prosecuting attorney who tried his case, which stated that she was informed by a juror after the trial that another unnamed juror, during a recess in the deliberations, had visited the park where the victim had regained consciousness. Relying on that letter, the appellant argued at the motion hearing and continues to argue on appeal that he was entitled to a new trial because of this juror misconduct in that evidence outside the record was obtained and used to convict him. The State, in opposing the appellant's motion for new trial on that basis, did not dispute the fact that juror misconduct consisting of a juror gathering evidence outside the record was a sufficient basis for granting a new trial in that as a matter of due process, a criminal defendant may only be convicted on the evidence properly in the record. *State v. Henderson,* 920 S.W.2d 588, 590 (Mo.App.1996). Rather, it argued below, and continues to argue here, that as a matter of law, the jury's verdict could not be impeached by juror testimony of juror misconduct, as the appellant was attempting to do. While the appellant concedes that the State is correct that as a general rule a jury's verdict cannot be impeached with juror testimony as to juror misconduct, *State v. Johnson,* 968 S.W.2d 123, 134 (Mo. *banc* 1998); *State v. Garrison,* 943 S.W.2d 847, 850 (Mo.App.1997), he contends that an exception exists to that rule where the juror misconduct is alleged

to have occurred outside the jury room, rather than inside the jury room, citing *Travis v. Stone,* 66 S.W.3d 1, 4 (Mo. *banc* 2002), and that the exception applied to his case. We agree.

Although in the context of a civil case,[3] the Missouri Supreme Court in *Travis* was confronted with the same issue that confronts us in this point, whether a jury's verdict can be impeached with juror testimony about alleged extrinsic juror misconduct affecting the verdict. In that regard, the Court held:

> The general rule in Missouri is that a juror's testimony about jury misconduct allegedly affecting deliberations may not be used to impeach the jury's verdict. However, it is permissible to elicit testimony about juror misconduct that occurred outside the jury room, such as the alleged gathering of extrinsic evidence at issue here.

*Travis,* 66 S.W.3d at 4 (citations omitted). In reading this language, there can be no doubt, as the appellant asserts, that the Court was recognizing that an exception existed as to the general rule prohibiting juror testimony to impeach the verdict of the jury, the exception being that a juror's testimony, concerning alleged juror misconduct outside the jury room, specifically the gathering of extrinsic evidence as part of an independent investigation, as alleged in our case, could be used to impeach a jury's verdict.

Despite what appears to be clear and unambiguous language of the opinion that the Court was recognizing an exception to the general rule prohibiting juror testimony to impeach a jury's verdict, the State contends that the language immediately following the quoted portion of the Court's opinion in *Travis,* upon which we rely for

the exception, would indicate that the Court, in allowing the consideration of the juror's testimony for purposes of granting the motion for new trial in *Travis,* was not recognizing an exception to the general rule, but was simply recognizing that the State in failing to object to such evidence at the hearing had waived any objection thereto. The language of *Travis* cited by the State in that regard reads:

> Even where the purpose of testimony regarding the misconduct (whether it occurred inside or outside the jury room) is to impeach the verdict, the party complaining of the testimony must make a timely and proper objection or else the issue is waived. Here the defendants ... failed to make any objection to [the] juror['s] ... testimony, nor do they now argue on this appeal that it would be improper to consider that testimony, and, in fact, they rely on that testimony to support their contention that there was no evidence of prejudice. Accordingly, the testimony is properly before this Court.

66 S.W.3d at 4 (citation omitted). Contrary to the contention of the State, we fail to see how that language would modify the Court's intent with respect to the express language immediately preceding it. To interpret the Court's opinion as argued for by the State, we would have to totally ignore the express language of the opinion that it is permissible to use juror testimony to impeach a jury verdict where the alleged juror misconduct occurred outside the jury room. Any fair reading of the portion of the opinion in question would lead us to conclude that in including the language championed by the State, the Court was simply recognizing an alterna-

---

**3.** No rational basis appears for distinguishing between civil and criminal cases as to the

issue presented.

tive basis for allowing the juror testimony in question in *Travis* to impeach the jury's verdict and did not intend to cut down the exception it had just recognized in the same paragraph. Having determined that the *Travis* exception is just that, an exception to the general rule prohibiting the use of juror testimony to impeach a jury's verdict, we now turn to the issue of whether that exception would apply here so as to entitle the appellant to the appellate relief he seeks.

■■■■ To be entitled to a new trial for juror misconduct, the movant has the burden of proving that the alleged juror misconduct actually occurred. *Mayes*, 63 S.W.3d at 625–26. Allegations of misconduct are not self-proving but must be proven. *State v. Smith*, 944 S.W.2d 901, 921 (Mo. *banc* 1997). And, as discussed, *supra*, in cases of alleged misconduct occurring outside the jury room, as alleged in our case, the *Travis* exception would apply, allowing the use of juror testimony to prove the misconduct to impeach the jury's verdict. *Travis*, 66 S.W.3d at 4. The mere proof of juror misconduct in obtaining extraneous evidence, however, does not automatically entitle a movant to a new trial. *Id.; State v. Taylor*, 917 S.W.2d 222, 226 (Mo.App.1996); *State v. Coleman*, 954 S.W.2d 1, 4 (Mo.App.1997). Rather, it raises a presumption of prejudice, shifting the burden to the non-movant to show that no prejudice resulted from the alleged juror misconduct. *Travis*, 66 S.W.3d at 4; *Taylor*, 917 S.W.2d at 226; *Coleman*, 954 S.W.2d at 4. To rebut the presumption of prejudice, the non-movant must show that

the jurors were not subjected to improper influence as a result of the misconduct. *Smith*, 944 S.W.2d at 921; *State v. Brown*, 939 S.W.2d 882, 883 (Mo. *banc* 1997); *State v. Chambers*, 891 S.W.2d 93, 101 (Mo. *banc* 1994).

■■■■ In light of the foregoing propositions of law, for us to exercise our discretion and grant plain error review of the trial court's denial of the appellant's motion for a new trial for the juror misconduct alleged, we would have to find, *inter alia*, that there exists, on the face of the appellant's claim, substantial grounds for believing that one of the jurors conducted an independent investigation leading to the juror's obtaining evidence not in the record and that the State failed to rebut the presumption of prejudice resulting therefrom. In that regard, even assuming, *arguendo*, that the appellant did establish that the misconduct occurred as alleged, which the State does not concede,[4] the State contends that the record indicates that the resulting presumption of prejudice, which arises in applying the *Travis* exception, was clearly rebutted such that the trial court did not commit error, plain or otherwise, in overruling the appellant's motion for a new trial. We agree.

■■■■ In determining whether prejudice resulted from alleged juror misconduct due to a juror's obtaining extraneous evidence, an important factor is the materiality of the evidence. *Travis*, 66 S.W.3d at 6. Immaterial evidence is not prejudicial. *Id.* To be "material," evidence must "[h]av[e] some logical connection with the conse-

4. With respect to whether the appellant established that juror misconduct occurred, the State contends that the appellant failed to present any evidence at the motion for new trial hearing proving the existence of such misconduct. It is unclear from the record whether the appellant ever had an opportunity to present evidence on his claim of juror misconduct or whether the trial court simply considered and accepted the State's argument that a juror cannot testify as to juror misconduct in order to impeach the jury's verdict such that no juror testimony was allowed. In any event, given our disposition of the point, we need not address that issue.

quential facts." BLACK'S LAW DICTIONARY 991 (7th Ed.1999). Because it is clear from the record that the extraneous evidence complained of by the appellant was not material to the jury's deliberations in convicting him of rape, kidnapping, and assault by strangulation, as we discuss, *infra*, it is apparent that the presumption of prejudice that would arise if the alleged juror misconduct in question was proven was rebutted.

As discussed, *supra*, in claiming juror misconduct entitling him to a new trial, the appellant relied at the motion hearing on the letter the defense received from the assistant prosecuting attorney. The letter disclosed that, shortly after the trial, an unnamed juror approached her and confided that one of the other jurors had conducted, during an overnight recess in deliberations, an independent investigation of the park where the victim had regained consciousness after having been transported there by the appellant. The appellant contends that this evidence-gathering safari at the park resulted in the jury's obtaining extraneous evidence concerning the remoteness of the park and that the "question of just how remote the park [was] was central to the jury's determination of guilt or innocence" with respect to his convictions of rape, kidnapping and assault by strangulation.[5] Just how the degree of remoteness of the park directly impacted the jury's determination of his guilt as to the offenses denominated is not well articulated in the appellant's brief. He appears, however, to be contending that evidence concerning the degree of the remoteness of the park was critical to whether the jury believed that he had stopped at the park while trying to find a hospital for the victim and was lost, to which he testified at trial, or whether he had driven to the park for the purpose of "dumping" the victim, demonstrating a consciousness of guilt, as the State argued at trial. From this, he appears to be contending that if he was successful in convincing the jury that he ended up in the park, not by design, but by chance on his way to the hospital with the victim, he would have been successful in refuting the State's evidence of his intent to kidnap the victim and its argument that he was at the park to "dump" the victim for the purpose of covering up his other crimes. Even accepting, *arguendo*, that the degree of remoteness of the park's location was critical to the appellant's case, his contentions with respect thereto do not aid his cause in that the issue of remoteness was not at issue at trial.

A detailed review of the record indicates that the remoteness of the park was never at issue at trial such that the jury's determination of the appellant's guilt as to the charges of rape, kidnapping, and assault by strangulation, would not have been improperly influenced by the alleged extraneous evidence as to that issue. Logically, while the characterization of the park's location being remote, extremely remote, etc., might have been subject to some dispute, the basis of such characterizations, the actual location of the park, either in absolute terms or in terms comparing it to other known landmarks, was not. The State's evidence clearly demonstrated that the park was in a remote location. The State's evidence in that regard consisted of testimony from one of the residents of the house where the victim went for help after regaining consciousness at the park, and Detective Joseph McKinstry of the Grandview Police Department, the first law en-

---

**5.** As stated, *supra*, in Point I, the appellant does not challenge his convictions for robbery and one count of assault.

forcement officer on the scene, both of whom testified that the park, and the surrounding area, were extremely remote. The appellant never introduced any evidence to dispute the location of the park or the fact that, comparatively speaking, it was not located in an area in which a reasonable person would have expected to find a hospital, if lost in his or her search for one. In fact, the appellant essentially admitted that the park was remote when he testified at trial that he pulled into the park so he would not be seen.[6] Obviously recognizing and accepting the location of the park and the fact that it was off the beaten path in terms of finding a hospital, the appellant pursued the only possible trial strategy available to him in attempting to lessen the adverse impact, if any, of the park's remoteness, which was to introduce evidence, specifically, his own testimony, of an alternative reason for why he ended up with the victim at a remote park, which issue came down to a credibility call for the jury that the appellant apparently lost. This appears to be a classic case of a defendant being stuck with a fact at trial, in that there is no viable way to refute it, and simply trying to put a different spin on that fact, in light of the other facts in the case, other than the spin offered by the State.

In summary, while the appellant complains that the alleged improper independent investigation of one of the jurors led to the jury being privy to extraneous evidence concerning the remoteness of the park, which improperly influenced their decision to convict, the record would clearly reflect otherwise, such that the presumption of prejudice arising from such alleged juror misconduct is overcome. Thus, it is obvious to us on the face of the appellant's claim that the trial court did not err, plainly or otherwise, in denying the appellant's motion for a new trial, predicated on such misconduct, prompting us to decline plain error review.

Point denied.

## II.

In Point II, the appellant claims that the trial court plainly erred in sentencing him as a persistent offender to life imprisonment for kidnapping[7] because he was not charged as a persistent offender in that the State, during the prior and persistent offender hearing, amended the information to charge him as a prior offender only. The appellant concedes that he did not properly preserve this point for appellate review and, therefore, requests plain error review under Rule 30.20, as set forth in Point I, *supra*. Where it appears that a defendant has been improperly sentenced as a prior or persistent offender, plain error review is appropriate. *State v. Dixon*, 24 S.W.3d 247, 250 (Mo.App.2000). In any event, the State concedes that it was plain error for the trial court to sentence the appellant as a persistent offender and

6. The appellant, on direct examination, testified:
   Q: Okay. And what did you do when you got off the highway?
   A: I started riding, then I started getting nervous and I started getting real paranoid, because I was high. I was getting paranoid and I started getting real scared. And then I didn't want to go to the hospital then.
   Q: Okay. Where did you go?
   A: I pulled over so nobody couldn't see me. I just pulled over so I could think.

7. While the trial court's judgment would indicate that the appellant was sentenced on all five convictions as a persistent offender, the only sentence actually enhanced on that basis was his sentence for kidnapping. Thus, the only prejudice that would have resulted from the trial court's alleged error in sentencing him as a persistent offender would have been with respect to his sentence for kidnapping, which is the only sentence he asks us to reverse.

acquiesces in our remanding for resentencing on his conviction for kidnapping.

A conviction for kidnapping, under § 565.110.1(5), is a class B felony for which a defendant can be sentenced to a term of imprisonment of not less than five years and not to exceed fifteen years, § 558.011.1(2). However, that punishment can be enhanced to a term not to exceed thirty years, if the defendant is found to be a persistent offender. § 558.016.7(2). A "persistent offender" is defined in § 558.016.3 as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Here, the appellant was found to be a persistent offender by the trial court such that he would have been subject to a maximum sentence of thirty years on the kidnapping conviction. For some unexplained reason, however, the trial court sentenced him to life, which exceeded the authorized sentence, even if the appellant was properly found to be a persistent offender.

■■■■ In charging the appellant as a prior and persistent offender, the State alleged that he had pled guilty to the felonies of delivery of a controlled substance in the Circuit Court of Cook County, Illinois, on January 7, 1997, and tampering in the first degree in the Circuit Court of Platte County, Missouri, on October 16, 1997. To be sentenced as a persistent offender, the State must charge and prove beyond a reasonable doubt that the defendant was such an offender, as defined by law, and the trial court must adjudge him as such based upon specific findings of fact. *Dixon*, 24 S.W.3d at 250. "'Without evidence of prior convictions, the court cannot sentence a defendant as a prior and persistent offender.'" *Dudley v. State*,

903 S.W.2d 263, 266 (Mo.App.1995) (citation omitted).

■■■ At the beginning of the appellant's trial, a hearing was held, outside the hearing of the jury, to determine whether he was a prior and persistent offender, as charged. To prove that the appellant was such an offender, the State offered certified copies of the appellant's felony convictions in Illinois and Missouri. Defense counsel objected to the admission of the documentation as to the Illinois conviction, claiming that it was not properly certified. The court reserved ruling on the objection, taking the issue of the appellant's status as a prior and persistent offender under advisement. At the close of all the evidence, the trial court announced its intention to rule on that issue. Before the court could rule, however, the State moved to amend the information to reflect that it was proceeding against the appellant as a prior offender only.[8] The motion was sustained without objection, and the information was amended accordingly. Nonetheless, as the State concedes, the trial court sentenced the appellant, as a persistent offender, to life imprisonment on the kidnapping conviction, which under the undisputed facts of the case, clearly exceeded the maximum sentence authorized under §§ 558.011.1(2) and 558.016.7(2), requiring us to reverse the trial court's judgment as to the appellant's sentence for kidnapping and remand his case for resentencing on that offense. *Dudley*, 903 S.W.2d at 267. Inasmuch as the appellant is no longer charged as a persistent offender, but only as a prior offender, on remand the trial court is to resentence the appellant for kidnapping in accordance with § 558.011.1(2), to a term

---

8. Section 558.016.2 defines a "prior offender" as "one who has pleaded guilty or has been found guilty of one felony." A prior offender, unlike a persistent offender, is not subject to having his or her sentence enhanced. However, like a persistent offender, a prior offender is not entitled to having his or her sentence recommended by a jury.

of five to fifteen years in the Missouri Department of Corrections.

## Conclusion

The judgment of the circuit court convicting the appellant of and sentencing him for forcible rape, two counts of assault in the first degree, kidnapping, and robbery in the second degree, is affirmed in all respects, except with respect to the appellant's sentence for kidnapping, which is reversed, with the case remanded to the court for the sole purpose of resentencing him thereon, in accordance with this opinion.

ULRICH, P.J., and HARDWICK, J., concur.