In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE
JAMEL YATES, ) No. ED109043
 )
 Movant/Appellant, )
 ) Appeal from the Circuit Court
 ) of the City of St. Louis
 vs. ) Cause No. 1922-CC11667
 )
STATE OF MISSOURI, ) Honorable Bryan L. Hettenbach
 )
 Defendant/Respondent. ) Filed: April 20, 2021

 OPINION

 I. Introduction

 Jamel Yates (“Movant”) appeals the judgment denying his Rule 29.15 motion without an

evidentiary hearing.1 Movant argues the motion court clearly erred in denying his claim that trial

counsel was ineffective for failing to properly investigate allegations of juror misconduct and

abused its discretion in denying post-conviction counsel’s requests to contact jurors. We reverse

and remand with directions to grant the evidentiary hearing and permit post-conviction counsel

to contact the jurors in preparation for that hearing.

 II. Factual and Procedural Background

1
 All rule references are to the Missouri Supreme Court Rules (2019).

 1
 This case began with an apparent attempted robbery in which Movant and an alleged

unknown accomplice shot at four individuals. Movant was charged with: (1) first-degree murder

of Devion Falls, (2) first-degree assault of Darereon Falls, (3) first-degree assault of Kenneth

Berry, and (4) first-degree assault of Alexis Wilson, each of which had an accompanying armed

criminal action count. The evidence at the jury trial showed that Kenneth, Darereon, Devion, and

Alexis2 drove to meet Movant to buy guns. Kenneth stayed by the car with Alexis, while

Darereon and Devion met with Movant behind a building. Movant brandished a firearm and

began shooting at Darereon and Devion as they ran toward the car. Devion was killed, no one

else was wounded. The jury found Movant not guilty on the counts involving the murder of

Devion and guilty for the first-degree assault of Darereon and accompanying armed criminal

action. The jury could not reach a verdict on the first-degree assaults and armed criminal action

counts relating to Kenneth and Alexis, and a mistrial was declared on those counts.

 Prior to sentencing, trial counsel filed a timely motion for new trial, raising no issues

regarding juror misconduct. That same day, trial counsel was contacted by a juror, and he spoke

with that juror and another (“Jurors A and B”) shortly thereafter about their concerns regarding

possible misconduct by another juror (“Juror C”). He filed a motion to continue the sentencing,

stating that he had been “apprised of information relevant to both the validity of the jury’s

verdict, and the integrity of any potential sentence” and needed time to “investigate this

information.” The trial court granted the continuance. Trial counsel then filed a motion to

question the jurors, which the trial court ruled was not a timely filed after-trial motion, but to the

extent it was, it was denied. Thereafter, trial counsel filed an amended motion for new trial based

2
 Because two of the victims have the same last name, we refer to all of them by their first names to avoid confusion.
We intend no familiarity or disrespect.

 2
on newly discovered evidence of juror misconduct. Attached thereto were the affidavits of Jurors

A and B. In relevant part,3 those affidavits provide as follows:

 Juror A
 [. . .]
 The jury deliberated the charges of murder first. After the jury had reached
 unanimous decisions with regard to the murder charges, the question of the charges
 of assault in the first degree were considered. There were two issues that were
 troubling to the jury in considering the Assault in the First Degree Charges. The
 first issue had to do with determining the nature of what was considered assault in
 the first degree. There was some question as to whether assault in the first degree
 was due to the nature of the threat, the type of force, or if it involved deliberately
 targeting the person whom the defendant was accused of assaulting. There was
 considerable discussion and deliberation by the jury of the charge against the
 defendant. The reason this question mattered was due to the wording of the charge:
 (as an example) You will find the defendant guilty of first degree assault if he
 attempted to kill or cause physical injury to “Kenneth Berry” by shooting at him.

 The other two first degree assault charges against the defendant involved Mr.
 Darereon Falls and Ms. Alexis. There was discussion as to whether the defendant
 or “unknown suspect” shot at Mr. Kenneth Berry and Ms. Alexis or if the defendant
 or “unknown suspect” was shooting at Mr. Davion Falls or Mr. Darereon Falls and
 the bullet was not aimed at either Mr. Kenneth Berry or Ms. Alexis but hit the car
 where they were sitting. There were multiple questions4 that were submitted to the
 judge regarding this question and they were answered by the judge indicating we
 should consider the instructions we were given and the wording of the charges.
 These questions continued to cause extended deliberation by the jury.

 The jurors took a break in which we could use the bathroom or join the bailiff to go
 outside if we needed to smoke. Otherwise we were to remain in the room or hallway
 adjacent to the jury deliberation room. One juror, with long blond hair, chose to
 smoke a cigarette during the break and her and the Bailiff went outside for the
 break. After taking the cigarette break with the bailiff and immediately upon
 resuming deliberation, the juror told the other jurors that she had found out the
 answer to what we had been trying to decide. That from a discussion with a police
 officer and “another person of some authority”, she found out what first degree

3
 The bracketed ellipses indicate omitted material. Otherwise, all punctuation--as well as grammatical and other
errors--is original.

4
 The questions were: “When considering whether the defendant is guilty of assault in the first degree, does the
degree refer to knowledge of target or intent to target the victim specifically (as opposed to hitting a bystander) or
does it refer to the potential degree of harm that may result”; “In the count of Assault in the first degree if the
defendant is not shooting at the individual A named in the count but at another individual B, can the defendant be
found guilty of assault in the first degree for person A”; and “Might I be the victim of first degree assault if I am
assaulted but was not the intended target.” To each of these questions, the trial court told the jury to be guided by the
evidence as they remember it and by the written jury instructions.

 3
assault meant. She said it was related to the degree of force and that she found out
that the charges against Mr. Kenneth Berry and Ms. Alexis would be legitimate
even if they were not shot at, but if the bullet was ever in the vicinity of the two.
This discussion went on for some time. At one point I said that I would not be taking
what she said as the instructions for how we were to interpret the sentence
describing the charge, particularly if the judge would not answer the same
questions; it is his courtroom and he is the authority that we should be listening to,
not a police officer and “another person of some authority” that just happened to be
in the vicinity of the juror.

I requested a meeting with the bailiff to express my displeasure that one of the
jurors who was with her on a cigarette break obtained information that “was to
clarify” the jurors’ questions when the judge was not willing to “clarify” the very
same questions. The bailiff told me that I should watch my tone and that I was
upset. I said that I was frustrated that the juror came back from her cigarette break
with information from two people who were not in positions of authority to be
giving the jury information. I said that I was not angry and I was simply frustrated
at the situation that violated the rules that the judge had established. The bailiff told
me that the juror was giving her opinion and not stating a fact to the other jurors. I
said that the juror did not state her information in the form of her opinion but facts
that we should consider in deliberation of the charges. The bailiff and I returned to
the jury deliberation room and said that the statements the juror previously made
were the juror’s opinions and that the person the juror talked to was not a police
officer. (I don't remember who the other person was, but there was no question that
he had some “authority”; neither the juror nor the bailiff was confused as to who he
was.) After some discussion, the bailiff asked the jurors if we wanted the judge to
come to the jury deliberation room to answer our questions and clarify the situation.
I said yes, that would be great. She said that wasn’t going to happen. (She said
something to the effect that we could write down our questions for the judge.)

It had already been a long day and we still had three charges to consider as well as
the charge of armed criminal action that went with them. We went back to the
wording of the charge, the meaning of the words used and the meaning of the
sentence describing the charge. We debated that what “shooting at someone”
meant. Because some of the jurors disagreed with others as to the meaning of the
sentence describing the charge of first degree assault we resubmitted the questions
to the judge. The judge essentially gave the same response to the questions as he
had done before.

Prior to submitting the questions, I had decided if the judge did not answer the
question with greater clarity than before I would make the assumption that the
words had the meaning that I previously knew them to have and that would be the
basis for my decision. It was late in the evening and despite differing opinions about
the meaning of the sentence, I was clear as to my decision at that time. I told the
jury that my decision with regard to the charges of assault by Mr. Jamel Yates upon

 4
Mr. Kenneth Berry and Ms. Alexis would be made upon the answers given by the
judge.

I remember being relieved and was hoping for a break in waiting for the judge to
reply. However, the jury decided to immediately consider the charge of first degree
assault by Mr. Jamel Yates with regard to Mr. Darereon Falls. It was late and I
hadn’t contemplated the charges against Mr. Jamel Yates concerning Mr. Darereon
Falls. I found these charges to be different from the other charges as Mr. Devion
Falls had been killed in the vicinity of Mr. Darereon Falls and that whoever (Jamel
or “unknown suspect”) was shooting was presumably aiming at those running
away. With it being so late and being exhausted, I felt like I had not given it the
thought I had given to the other charges and to be honest I don’t know if I could
have done that since I was both hungry and exhausted. In the end, the decision was
made to find him guilty of the charge of first degree assault and armed criminal
action against Mr. Darereon Falls.

[...]

[. . .] the juror who had taken the cigarette break ended up causing considerably
more time spent deliberating than otherwise might have occurred. In addition, her
influence on the deliberation could have been considerable had questions about the
appropriateness of the sources she talked to outside had not been weighed heavily
and it being decided that the judge was the ultimate authority of the courtroom. I
believe that deliberation of the remaining assault charge against Mr. Jamel Yates
may have been decided differently had the jurors deliberated with the thoroughness
that was done in the previous charges.

Juror B
[ . . . ] We had eight charges to consider. We came to a unanimous decision on a
few of the counts rather easily and quickly. We then tackled the remaining charges
and encountered great difficulty in deciding how to apply the law as instructed by
the court, how to determine what was reasonable, and what we could reasonably
conclude from the evidence. By lunchtime, we were frustrated, and we were
concerned that we might be at an impasse on the remaining charges. We sent
questions to the judge in an attempt to gain some clarity. [. . .]

One of the issues on the table was whether assault in the first degree was determined
by intent, meaning intent to harm the person named as the victim in the charge
specifically, whether mere presence at the scene made the victims intended targets,
or whether the degree of the charge was determined by the potential harm that could
result from the defendant's actions. One juror in particular argued that she had
insight on this from personal experience. She had indicated during jury selection
that she had once been charged with assault for slapping her husband. She explained
to us in the jury room that it had been a third degree assault charge because the
injury to her husband as a result of her slapping him was not severe. She argued
that in this case, the assault was in the first degree because the charge was that the

 5
defendant had shot at the victim, thus death or serious injury could result.
Collectively, we still could not come to an agreement on the remaining charges.

This particular juror was also a smoker, and jurors that smoked had to be escorted
out of the building by the bailiff if they wanted to smoke. She and the bailiff, and
sometimes another juror, had taken a few smoke breaks in the course of the trial.
The juror said she was going to ask for a sidebar conversation with the bailiff to try
to get clarity on this during a smoke break. When the juror returned from her smoke
break with the bailiff, she seemed much more at ease, and she said she had answers
for us. Several jurors asked her and the bailiff what happened. The bailiff said that
the juror would relay their conversation to us and left the room so we could continue
deliberating.

The juror told us that the bailiff confirmed that the charge was about degree rather
than intent. My recollection is that the juror said she had discussed her own assault
charge with the bailiff during the break, and had been given confirmation that her
own charge had been third degree because the harm that would occur from a slap
was minimal. At first, this seemed to be helpful information to me, in making my
own decision about how to vote on these charges. I was not at all clear on who was
the intended target of the shooting, if indeed the defendant had even been the
shooter, but it was of course clear to me that serious bodily harm or even death
could result from being shot. Thus, if I could agree that it might be reasonable to
assume the defendant was shooting, which I was struggling with, I could agree that
serious harm or death could result from that action. I did not believe that the shooter
(whether that was the defendant or the other unidentified person at the scene) was
targeting the people in the vehicle. Because the language of the instruction was that
the defendant had to be shooting “at” the victim named in the charge, I did not
believe the defendant was guilty of assault in the first degree in the charges naming
the people in the vehicle.

A juror reminded us that we were not to receive instruction or information regarding
the case from anyone beyond the evidence we were presented with in the courtroom
and the instructions handed to us by the judge on the charges and how to apply the
law to them. If we were going to determine that the degree of the assault was to
come from the potential harm caused rather than the intent, that clarification should
come from the judge, not from the juror’s accounting of a conversation with the
bailiff over a smoke break. A juror requested another sidebar with the bailiff. When
that juror and the bailiff returned, a tense interaction happened in the jury room
between the bailiff, the juror who had just stepped out with her and with the juror
who had been on the smoke break earlier. The bailiff said she wanted to make it
clear that she had not discussed the case with the juror during the smoke break, and
that whatever the juror had relayed to us was the juror’s own opinion. The bailiff
seemed angry. The juror who had just stepped out of the room to speak with the
bailiff said that he wanted clarification from the judge, not information that a juror
gleaned from the bailiff and the other officer who had been a part of the discussion
during the smoke break. This was the first I heard that there was another person

 6
 involved in the discussion. The bailiff angrily asserted that there had been no other
 officer in the conversation. It is not clear to me who the third person was, if there
 was a third person. The juror who had been on the smoke break tried to clarify what
 was said. The juror arguing with the bailiff said he wanted any and all information
 and instruction on the case to come only from the judge, and because the judge had
 not answered the questions sent him by the jury, beyond saying to follow the
 instructions already given, the juror felt that it was inappropriate to consider any
 other information that might have been obtained from a discussion with the bailiff.
 The bailiff asked if we wanted her to bring the judge up to the jury room so we
 could ask him ourselves. We said yes, that we had not realized that was an option.
 She repeated her question. We again said yes. The bailiff then said that was not
 going to happen. She left so we could deliberate, but the atmosphere had become
 very uncomfortable. I tried to discount in my own mind what the juror had relayed
 from her conversation with the bailiff. After the bailiff left, we tried again to get
 clarification by sending questions to the judge, but we received the same answers
 as before.

 [. . .]

 [ . . . ] I was concerned about our deliberations. I wondered whether I would have
 voted the same way on some of the charges had the entire interaction with the bailiff
 and the juror during their smoke break not been communicated to me.

The trial court denied the original motion for new trial, but did not rule on the amended motion

containing the affidavits. Movant was sentenced to 30 years’ and 15 years’ imprisonment for the

first-degree assault of Darereon and the associated armed criminal action, respectively, which

terms were to be served consecutively.

 Movant filed a notice of appeal and, before briefing, requested that this Court remand for

an evidentiary hearing on the amended motion for new trial to address the newly discovered

evidence of juror misconduct, which we granted, and the trial court set a date for the hearing

approximately two weeks after remand. Prior to the hearing, trial counsel filed a motion for

change of judge or recusal. Therein, among the allegations regarding the change of judge, trial

counsel stated that he “wishes to conduct further investigation of the potential misconduct by

speaking with, and obtaining statements from, the remaining jurors.” But he did not actually seek

permission from the trial court to contact those jurors, and no other motion to contact jurors was

 7
filed prior to the hearing on the amended motion for new trial. At the hearing, trial counsel orally

requested a continuance, claiming that he had not had sufficient time since the hearing was set to

gather the information he needed and subpoena Jurors A and B. Trial counsel also pointed out

that he had not yet spoken to the other ten jurors and argued that the trial court needed “to hear

what those ten jurors have to say.” The trial court denied the motion for a continuance, and the

hearing proceeded. Trial counsel read the affidavits of Juror A and Juror B into the record. No

other evidence was adduced.

 The trial court issued an order denying the amended motion for new trial. Therein, the

trial court noted that the only evidence at the hearing was the affidavits of Jurors A and B, which

demonstrated “no basis for a finding of prejudice.” The trial court concluded that “the juror

frustration and discussion about assault referenced in the affidavits appears pertinent, if at all, to

the assault charges where the victims were [Kenneth and Alexis], charges on which the jury

hung, and not the primary assault charge for which the victim was [Darereon], and for which

defendant was found guilty.” Both Jurors A and B, the trial court found, stated “that instructions

given by the Court were followed, and that the jurors discussed that they were to follow the

judge’s instructions and not what one juror may have deduced from her own prior case or from a

discussion with anyone else.”

 Movant’s direct appeal then proceeded, and this Court concluded that the trial court had

not abused its discretion in denying the amended motion for new trial. The judgment on his

convictions for first-degree assault and armed criminal action involving Darereon was affirmed

by per curiam order. State v. Yates, 577 S.W.3d 906 (Mo. App. E.D. 2019. Thereafter, Movant

filed a timely pro se Rule 29.15 motion. Post-conviction counsel was appointed and was granted

 8
a continuance to file an amended motion. The same judge who had presided over the trial and the

proceedings on remand presided over these post-conviction proceedings.

 Prior to the deadline for filing the amended Rule 29.15 motion, post-conviction counsel

filed a request to view the voir dire list and for permission to contact the jurors “[i]n order to

fully evaluate [Movant’s] claims for post-conviction relief.” That request was denied without

explanation. The next day, post-conviction counsel filed an amended request to view the petit

jury list and for permission to contact the jurors who deliberated “[i]n order to fully evaluate

[Movant’s] claims for post-conviction relief.” Post-conviction counsel stated this request was

made “in good faith on the basis that he believes the petit jury information will uncover a

possibly meritorious post-conviction claim. Specifically, [Movant] seeks to investigate whether

trial counsel was ineffective for failing to investigate alleged juror misconduct.” He alleged that

“the only way to determine if [Movant] was prejudiced by these failures is for post-conviction

counsel to contact the jury members and discover what they would have told trial counsel had he

followed the proper procedures and contacted those who deliberated,” noting there was no other

way for post-conviction counsel to fully evaluate these claims. Again the request was denied

without explanation. Movant sought a writ of mandamus to compel the motion court to grant his

request, which was denied.

 Thereafter, post-conviction counsel timely filed an amended Rule 29.15 motion on behalf

of Movant. Movant alleged trial counsel was ineffective because, following remand, he failed to

file a new request for permission to question the jury and failed to offer any testimony or present

any new evidence at the hearing on the amended motion for new trial, relying instead on the two

affidavits that had already been submitted to the trial court months before. Movant alleged that

reasonably competent trial counsel in the same or similar circumstances would have filed a new

 9
motion to question the jurors, conducted an investigation, prepared witnesses, and presented

testimony at the hearing on the amended motion for new trial. He alleged that trial counsel’s

conduct was objectively unreasonable and not based on any reasonable trial strategy.

 As to prejudice, Movant alleged that but for trial counsel’s post-remand failure to

investigate and present the additional jurors’ testimony about the misconduct at that hearing, “it

is reasonably likely that [Movant] would have been granted a new trial.” Again Movant asked

the motion court to permit post-conviction counsel to contact the jury “for the limited purpose of

investigating juror misconduct and demonstrating trial counsel was ineffective.” Because

permission to contact the jurors had not been granted, Movant alleged his “only option” was to

allege in good faith what the anticipated testimony would be based on the available information

in the record: “one or more of the jurors would testify that extrinsic information about what

constitutes assault in the first degree was obtained and brought it into the deliberation room” and

“that this extrinsic information interfered in the deliberations and that it may have impacted the

verdict.”

 The motion court denied the amended Rule 29.15 motion without an evidentiary hearing.

In its findings of fact and conclusions of law, the motion court recited the applicable

law regarding an ineffective assistance of counsel claim and the prohibition on relitigating issues

raised on direct appeal in a Rule 29.15 motion. Then the motion court held as follows:

 The court finds movant’s claim is without merit. This issue of juror misconduct was
 addressed by this Court and by the Court of Appeals. This Court had before it the
 affidavits of two jurors, and what was stated in the affidavits was consistent with
 the questions asked by the jury during deliberation. The improper discussion
 related to counts on which movant was not found guilty, and the jurors said the
 comments did not affect the verdicts.

The motion court also stated that Movant “failed to allege grounds that would entitle him to

relief if true and that are not refuted by the record.” This appeal follows.

 10
 III. Standard of Review

 We review the motion court’s findings of fact and conclusions of law for clear error.

Shockley v. State, 579 S.W.3d 881, 892 (Mo. banc 2019). Those findings and conclusions are

presumed correct and will only be found clearly erroneous if, after reviewing the record, we are

left with the definite and firm impression a mistake was made. Id. We review denial of post-

conviction counsel’s request for juror information for an abuse of discretion. McFadden v. State,

553 S.W.3d 289, 301 (Mo. banc 2018). An abuse of discretion occurs when the ruling is

clearly against the logic of the circumstances before the court and is so unreasonable and

arbitrary that it shocks one’s sense of justice and indicates a lack of careful, deliberate

consideration. State v. Carpenter, 605 S.W.3d 355, 359 (Mo. banc 2020).

 IV. Discussion

 In his first point on appeal, Movant contends it was an abuse of discretion to deny post-

conviction counsel’s requests to contact jurors. In his second point on appeal, Movant contends

the motion court clearly erred in denying his ineffective assistance of counsel claim without an

evidentiary hearing. We agree.

A. Applicable Law

 Juror Misconduct

 While there is no right to contact jurors, courts have the discretionary power to grant

permission to contact jurors after trial and in a post-conviction proceedings where there is a

credible indication that juror misconduct has occurred. See Strong v. State, 263 S.W.3d 636, 643-

44 (Mo. banc 2008) (affirming denial of request to contact jurors that contained only a “general

allegation of juror misconduct” and did not “articulate any basis for suspecting juror

misconduct”). Courts will not permit counsel to go on a “fishing expedition” to find a juror who

 11
will support an allegation of misconduct. McFadden, 553 S.W.3d at 301 (affirming denial of

request to contact additional jurors about misconduct that had been disproved on initial

questioning of juror accused of intentional nondisclosure, where there was no indication other

jurors would have materially different information about the matter).

 “To be entitled to a new trial for juror misconduct, the movant has the burden of proving

that the alleged juror misconduct actually occurred.” State v. Stephens, 88 S.W.3d 876, 883 (Mo.

App. W.D. 2002). While juror testimony is generally inadmissible for the purpose of impeaching

a verdict, jurors can testify about misconduct that involves the gathering of extrinsic information.

See Travis v. Stone, 66 S.W.3d 1, 4 (Mo. banc 2002)5; see also Strong, 263 S.W.3d at 643-44.

Once it is established that juror misconduct involving extrinsic information occurred, a

rebuttable presumption of prejudice arises, and the burden shifts to the non-moving party to

overcome that presumption with evidence that the misconduct did not improperly influence the

verdict. See Travis, 66 S.W.3d at 3, 4; Stephens, 88 S.W.3d at 883. The materiality of the

extrinsic information is an important factor in determining prejudice. See Stephens, 88 S.W.3d at

883-84. The outcome of a motion for new trial under these circumstances often depends on

weighing jurors’ live testimony and affidavits to determine prejudice. Compare Travis, 66

S.W.3d at 5-6 (finding testimony of one juror, who denied effect of her misconduct, was not

sufficient to overcome the presumed prejudice) with Smotherman v. Cass Regional Medical

Center, 499 S.W.3d 709, 713 (Mo. banc 2016) (finding credible testimony of eight jurors that

extrinsic information did not influence their deliberations was sufficient to rebut presumption of

prejudice).

 Ineffective Assistance of Counsel

5
 Civil cases are equally applicable to this issue in a criminal case. See Stephens, 88 S.W.3d at 882, fn.3 (“No
rational basis appears for distinguishing between civil and criminal cases as to the issue presented).

 12
 Trial counsel’s conduct regarding a juror misconduct issue can be the basis of an

ineffective assistance claim. See, e.g., Dorsey v. State, 156 S.W.3d 825, 830 (Mo. App. W.D.

2005). As with any ineffective assistance of counsel claim, the movant must show that (1)

counsel failed to exercise the level of skill and diligence that “reasonably competent” counsel

would exercise in a similar situation and (2) there is a “reasonable probability” that, but for

counsel’s unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). To obtain an evidentiary hearing on

such a claim, (1) the movant must allege facts, not conclusions, that if true warrant relief, (2) the

facts must raise matters not conclusively refuted by the record, and (3) the matters complained of

must have resulted in prejudice to the movant. Reliford v. State, 186 S.W.3d 301, 304 (Mo. App.

E.D. 2005). “An evidentiary hearing may only be denied when the record conclusively shows

that the movant is not entitled to relief.” Wilkes v. State, 82 S.W.3d 925, 928 (Mo. banc 2002)

(emphasis in original).

B. Analysis

 With the above principles in mind, we address together Movant’s points regarding the

propriety of denying the amended Rule 29.15 motion without an evidentiary hearing and the

requests to contact jurors.

 Relitigation of Juror Misconduct Raised on Direct Appeal

 Movant argues that the motion court’s conclusion that his claim had no merit because

“this issue of juror misconduct” had already been addressed on direct appeal is clearly erroneous.

We agree. While an issue decided on direct appeal cannot be relitigated in a post-conviction

motion by cloaking it in a theory of ineffective assistance of counsel, that is not what happened

here. See Hannon v. State, 491 S.W.3d 234, 245 (Mo. App. E.D. 2016). The issue on direct

 13
appeal was whether the trial court abused its discretion in denying the amended motion for new

trial, and our review was limited to the evidence before the trial court, which consisted of only

the affidavits of Jurors A and B. The issue raised in Movant’s post-conviction motion asks a

different question: whether counsel was ineffective in failing to obtain and present additional

evidence from the other jurors in support of the amended motion for new trial and whether that

additional evidence would have changed the outcome of that motion.

 Sufficiency of Allegations Warranting Evidentiary Hearing

 The other stated basis for denying Movant’s amended Rule 29.15 motion without an

evidentiary hearing--that Movant “failed to allege grounds that would entitle him to relief if true

and that are not refuted by the record”--is also clearly erroneous. It is not clear from this

boilerplate language what in particular the motion court believed was refuted or insufficiently

alleged. The State argues that (a) Movant failed to allege facts showing that any of the other

jurors would have provided testimony about the juror misconduct beyond what the affidavits of

Jurors A and B had already established and (b) the record refuted the allegation that there was a

reasonable probability the amended motion for new trial would have been granted if trial counsel

had presented additional juror testimony. We disagree.

 First, Movant’s inability to plead with specificity what the other jurors would have said

was entirely the result of the motion court’s refusal to give post-conviction counsel permission to

contact those jurors before filing the amended Rule 29.15 motion. We find those pre-filing

refusals--as well as the implicit denial of the same request in the amended Rule 29.15 motion

itself--to be an abuse of the motion court’s discretion.

 The affidavits of Jurors A and B undisputedly provided a credible basis for suspecting

juror misconduct, meeting the threshold requirement for granting permission to contact jurors.

 14
See Strong, 263 S.W.3d at 644; McFadden, 553 S.W.3d at 300-01. And those affidavits showed

that all of the jurors had been exposed to this misconduct: Juror C brought extrinsic information

about what constitutes first-degree assault into the jury room, which was discussed at length by

the jurors when deliberating the first-degree assault charges. But the affidavits contain the

accounts of only two of the twelve jurors in the room. Common sense dictates that among twelve

jurors there are likely to be differences in their accounts of this event, as confirmed by the

differences in the accounts of Jurors A and B. Gathering the accounts of all the people who were

present during the misconduct, including Juror C, was necessary for post-conviction counsel to

determine whether any of those accounts would have made a difference at the hearing on the

amended motion for new trial. The requests were not, as the State suggests, a fishing expedition

to find support for an otherwise unsubstantiated allegation of misconduct. See c.f. McFadden,

553 S.W.3d at 301.

 The motion court gave no explanation for refusing post-conviction counsel’s requests,

and we cannot find a logical reason for doing so under these circumstances. The only conclusion

to be drawn here is that denying the requests was an abuse of discretion. Thus, to the extent

denial of the Rule 29.15 motion was based on this particular pleading deficiency, it was clearly

erroneous under these circumstances. See Taylor v. State, 728 S.W.2d 305, 307 (Mo. App. W.D.

1987) (finding error for motion court to “deny the motion on the ground that the movant’s case

was unsupported” while also denying movant the right to offer testimony in support of that

motion).

 Second, the record does not conclusively refute Movant’s allegation that there was a

reasonable probability the amended motion for new trial would have been granted if trial counsel

had presented additional juror testimony instead of only two jurors’ affidavits. The State argues

 15
that the record shows those affidavits were sufficient to establish the misconduct of Juror C and

raise the presumption of prejudice, even without testimony from the other jurors. See Travis, 66

S.W.3d at 3, 4; Stephens, 88 S.W.3d at 883. Additional testimony about the misconduct, it

contends, would have been cumulative on that issue, and as to prejudice, jurors would not be

permitted to testify that the improper extrinsic information influenced their verdict. But

testimony that might be deemed inadmissible to impeach the verdict is not the only testimony

that might impact a prejudice determination. Additional admissible juror testimony about the

facts surrounding the interjection of extrinsic information into their deliberation could have

impacted the prejudice determination. See generally Neighbors v. Wolfson, 926 S.W.2d 35, 37

(Mo. App. E.D. 1996) (distinguishing between factual testimony and testimony about matters

inherent to the verdict, such as that jurors “acted on improper motives, reasoning, beliefs or

mental operations”). For instance, other jurors’ testimony might have provided additional or

different information about the content of the extrinsic information Juror C shared or the context

in which that extrinsic information was discussed. Testimony on these issues could have

impacted whether the extrinsic information was deemed material to the charge on which Movant

was convicted, which is an important factor in determining prejudice. See Stephens, 88 S.W.3d at

883. The record does not foreclose the possibility of a different prejudice determination if the

amended motion for new trial was supported by testimony from more than just two of the twelve

jurors. See Travis, 66 S.W.3d at 5-6; Smotherman, 499 S.W.3d at 713.

 Of course, it remains to be seen what those other jurors will actually say and whether it

will support Movant’s claim for relief, making it virtually impossible to say conclusively that he

is not entitled to relief. This record leaves us with the firm and definite impression that, in this

 16
particular situation, it was a mistake to deny Movant a meaningful opportunity to gather support

for his claim and present it at an evidentiary hearing.

 Points I and II are granted.

 V. Conclusion

 For the foregoing reasons, the judgment denying Movant’s amended Rule 29.15 motion

without an evidentiary hearing is reversed. The case is remanded with directions to (1) grant

Movant’s request for an evidentiary hearing on the claim raised in the amended Rule 29.15

motion and (2) grant post-conviction counsel permission to contact the jurors who deliberated in

this case in preparation for that evidentiary hearing.

 _______________________________
 Colleen Dolan, P.J.

Robert M. Clayton III, J., concurs.
Kelly C. Broniec, J., concurs.

 17